339 F.Supp. 295 (1972)
Ethel READING, Plaintiff,
v.
Elliot RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.
No. 71 C 251(3).
United States District Court, E. D. Missouri, E. D.
January 11, 1972.
*296 Warren Grauel, St. Louis, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., Kenneth R. Heineman, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
Plaintiff by this action seeks review of a final decision of the Secretary of Health, Education and Welfare denying her claim for post-hospital extended care insurance benefits under Part A of Title XVIII of the Social Security Act for expenses incurred while plaintiff recuperated from a broken hip at the St. Louis Geriatrics Center. Section 1869(b) of the Social Security Act, 42 U.S.C. § 1395 ff(b), providing for judicial review of the final decision of the Secretary when the amount of hospital insurance benefits in controversy is $1000 or more. The parties submitted the matter to the court on defendant's motion for summary judgment, including the prior record of proceedings.
On February 9, 1970, plaintiff received notice that her claim for benefits under section 1812 of the Social Security Act, 42 U.S.C. § 1395d, had been denied upon the ground that the care she received at the St. Louis Geriatrics Center was not covered by Title XVIII of the Act. Plaintiff requested reconsideration of this decision, following which the initial determination was affirmed. On December 2, 1970, a hearing was held before a Hearing Examiner of the Bureau of Hearings and Appeals of the Social Security Administration in St. Louis, Missouri at plaintiff's request. On January 28, 1971, the Hearing Examiner issued his decision denying any payment for the extended care services rendered to plaintiff. On February 1, 1971, plaintiff filed a Request for Review *297 of Hearing Examiner's Action, but the Appeals Council of the Social Security Administration affirmed the Hearing Examiner's decision and so notified plaintiff on March 3, 1971. This determination stands as the final decision of the Secretary subject to judicial review under the provisions of section 1869(b) of the Act, 42 U.S.C. § 1395ff(b).
On February 9, 1969, plaintiff, who was then 89 years of age, suffered a fall at her residence in Clayton, Missouri and was taken to Barnes Hospital in St. Louis. At Barnes, Dr. Arthur Stein, an orthopedic surgeon, examined her and had x-rays taken. The x-rays revealed that plaintiff had sustained a fractured left hip. Dr. Stein advised plaintiff of the nature of her injury and recommended that she undergo surgery to set the fracture through insertion of steel pins into the broken bones. Dr. Stein advised plaintiff that if she did not submit to surgery, her hip would take at least nine months to a year to heal. Nevertheless, plaintiff refused the operation. In an affidavit placed before the Hearing Examiner, plaintiff states that she did so because, as a practicing Christian Scientist, she chose to rely on divine healing of her faith for healing. When Dr. Stein was informed of plaintiff's decision, he advised that she be taken out of the hospital and placed in a nursing home where she could receive care while her leg and hip were immobilized to permit the bones to knit. Plaintiff's daughter, Darline R. Beile, first contacted the Peace Haven Nursing Home, a Christian Science facility located in St. Louis County. Before the Hearing Examiner, Mrs. Beile testified that she was told that Peace Haven had no facilities to take care of a person in her mother's condition, and that the Home could not take her. Mrs. Beile then contacted St. Louis Geriatrics Center in Chesterfield, Missouri and, on Dr. Stein's approval, plaintiff was taken there. The record reflects that she was discharged from Barnes Hospital on February 18, 1969, after a nine day stay, and admitted to the St. Louis Geriatrics Center on the same day with a diagnosed "intertrochanteric hip fracture." This diagnosis was not changed during the time plaintiff remained in the Center or upon her release on July 31, 1969.
Nurse's notes from the Center indicate that plaintiff was admitted at 10 a. m. on February 18, 1969, accompanied by her daughter. Her left hip appeared displaced. Plaintiff is said to have appeared "comfortable but tense." Nurse's notes dated February 19, 1969 state that plaintiff appeared very distressed with a large fecal inpaction. A glycerin suppository was inserted at plaintiff's request with no results, but it was stated that plaintiff "felt sure the Lord would take care of the problem." The notes state that at 4 p. m. on February 23 a clear water enema was given on orders of a Dr. Costello with good results. Afterwards, plaintiff was comfortable and quiet.
The record indicates that plaintiff was visited approximately once a month by a Dr. Birenbaum commencing March 5, 1969. Dr. Birenbaum dictated her treatment and made notes on her condition throughout the remainder of her stay at the Geriatrics Center. The record indicates that Dr. Stein did not visit plaintiff during this time. Mrs. Beile testified before the Hearing Examiner that Dr. Stein had told her that it would be an unnecessary expense to have him, a specialist, treat her mother while her hip was mending. She testified that she engaged Dr. Birenbaum, a "regular M. D.", to make monthly visits and to be her mother's physician while she remained at the Geriatrics Center.
The nurse's notes throughout plaintiff's stay at the Center report no significant events other than periodic administration of laxatives or glycerin suppositories and the taking of x-rays. Temperature, blood pressure and respiration readings were taken regularly. Plaintiff had to be bathed and fed. Gradually she showed improvement. On May 7, she was permitted to be propped up in bed. On May 28, she was permitted to dangle her legs over the side *298 of the bed. Later her hip was able to bear weight. Plaintiff remained at the Geriatrics Center until July 31, 1969 when she was transferred to Peace Haven, a Christian Science Nursing Home. She remained at Peace Haven until December 31, 1969 at which time she returned to her home, where she now resides alone.
It is not disputed that plaintiff was eligible for insurance benefits under § 1811 of the Act, that the Geriatrics Center qualified as an extended care facility under § 1861(j) and that plaintiff's stay at Barnes Hospital qualified her for post-hospital extended care services under the terms of § 1861(i). However, the Hearing Examiner concluded from the evidence before him that plaintiff was not entitled to hospital insurance benefits for two reasons:
1.) no physician made the certification required by § 1814(a) (2) (C) of the Act, 42 U.S.C. § 1395f(a) (2) (C); and
2.) the care plaintiff received at the Geriatrics Center came under the "custodial care" exclusion of § 1862(a) (9) of the Act, 42 U.S.C. § 1395y(a) (9).

Applicable Statutes 
Section 1812, 42 U.S.C. § 1395d sets forth the scope of the benefits provided under Part A of Title XVIII of the Social Security Act:
"(a) The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf or, in the case of payments referred to in section 1395f(d) (2) of this title to him (subject to the provisions of this part) for 
* * * * * *
"(2) post-hospital extended care services for up to 100 days during any spell of illness; ..."
Section 1814, 42 U.S.C. § 1395f contains conditions of and limitations on payment for services and provides in relevant part as follows:
"(a) ... payment for services furnished an individual may be made only to providers of services ... and only if 
* * * * * *
"(2) a physician certifies (and recertifies, where such services are furnished over a period of time, in such cases, with such frequency, and accompanied by such supporting material, appropriate to the case involved, as may be provided by regulations ..) that 
* * * * * *
"(C) in the case of post-hospital extended care services, such services are or were required to be given on an inpatient basis because the individual needs or needed skilled nursing care on a continuing basis for any of the conditions with respect to which he was receiving inpatient hospital services ... prior to transfer to the extended care facility ..."
Section 1861(h), 42 U.S.C. § 1395x (h), in pertinent part provides:
"The term `extended care services' means the following items and services furnished to an inpatient of an extended care facility ... by such extended care facility 
"(1) nursing care provided by or under the supervision of a registered professional nurse;
"(2) bed and board in connection with the furnishing of such nursing care;
* * * * * *
"(5) such drugs, biologicals, supplies, appliances, and equipment, furnished for use in the extended care facility, as are ordinarily furnished by such facility for the care and treatment of inpatients;
* * * * * *
"(7) such other services necessary to the health of the patients as are generally provided by extended care facilities; . . ."
Section 1862(a), 42 U.S.C. § 1395y (a), in pertinent part provides:
"Notwithstanding any other provision of this subchapter, no payment *299 may be made under part A or part B for any expenses incurred for items or services 
* * * * * *
"(9) where such expenses are for custodial care; ..."

Scope of Review 
Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), made applicable to Title XVIII by § 1869(b), 42 U.S.C. § 1395ff(b), specifies the nature and scope of judicial review authorized in this case. Section 205(g) expressly provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive" on the reviewing court. "Substantial evidence" is such relevant evidence that a reasonable man would accept as adequate to support a conclusion. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963).

Certification 
In his decision denying plaintiff's claim, the Hearing Examiner found that no physician made the certification required by § 1814(a) (2) (C), 42 U.S.C. § 1395f(a) (2) (C). However, the record contains a certification by Dr. Arthur H. Stein dated December 1, 1969, which letter states [p. 127]
"This is to certify that the above captioned patient was admitted to the Barnes Hospital on my orthopedic service on February 10, 1969. She was admitted because of a severely comminuted, displaced intertrochanteric fracture of the left femur. Because Mrs. Reading was a Christian Scientist she did not accept operative treatment of her fracture and for this reason she was transferred to the Geriatrics Center on Highway 40 on February 18, 1969 for further nursing care which was absolutely necessary."
Dr. Stein's letter to plaintiff is the only evidence in the record relevant to the point, and this court therefore finds that the conclusion reached by the Hearing Examiner is unsupported by substantial evidence. Celebrezze v. Bolas, supra.
As plaintiff's physician, Dr. Stein suggested that she be taken to the Geriatrics Center. His December 1, 1969 certification expressly states that plaintiff was transferred to the Center to receive further nursing care for the fracture she had sustained and that such nursing care was absolutely necessary. The fact that Dr. Stein did not give his certification until after plaintiff had been removed from the Center does not render it inadequate. Section 1814(a) (2) (C) does not require that certification be made prior to or contemporaneously with an individual's stay in a post-hospital extended care facility. The statute expressly permits a physician to certify that services "were required to be given on an inpatient basis because the individual ... needed skilled nursing care ..." (Emphasis supplied). Defendant has cited no regulations promulgated under authority of § 1814(a) (2) (C) which indicate that Dr. Stein's certification is insufficient. The court finds and concludes that the December 1, 1969 certification satisfied the requirements of § 1814(a) (2) (C) as a matter of law.

Custodial Care 
The Secretary's primary defense to plaintiff's claim is that the care she received at the St. Louis Geriatrics Center fell within the "custodial care" exclusion of § 1862(a) (9), 42 U.S.C. § 1395y(a) (9). As noted in defendant's memorandum in support of the motion for summary judgment, review of the evidence now of record reveals no factual dispute between the parties on this point. The record contains substantial evidence to support the Secretary's factual findings on the activities performed for plaintiff during her stay at the Center. The issue is whether under such facts the care plaintiff received at the Geriatrics Center was "custodial" within the meaning of the Act or whether it *300 qualified as "extended care services" under § 1861(h), 42 U.S.C. § 1395x(h). Although the Secretary's findings of fact are conclusive on a reviewing court if they are supported by substantial evidence, the court is not bound to accept his conclusions of law. Wolf v. Gardner, 386 F.2d 295 (6th Cir. 1967); Gaden v. Gardner, 263 F.Supp. 374 (D.S.C.1967); Lester v. Celebrezze, 221 F.Supp. 607 (E.D.Ark.1963); Kilby v. Ribicoff, 198 F.Supp. 184 (E.D.Pa.1961); Martin v. Ribicoff, 195 F.Supp. 761 (E.D.Tenn. 1961). If the Secretary has failed to employ the proper legal standard in making his determination, his findings may not stand. Branham v. Gardner, 383 F. 2d 614 (6th Cir. 1967); Haskins v. Finch, 307 F.Supp. 1272 (W.D.Mo.1969).
The term "custodial care" is not defined in the Act. Defendant argues that the term must be construed to connote a level of maintenance care necessary to meet an individual's daily living requirements. In the memorandum filed in support of the motion for summary judgment, the Secretary argues:
"Custodial care is the type of care which is designed essentially to assist an individual in the routine of daily living, e. g. assistance in walking, getting in and out of bed, bathing, use of toilet facilities, dressing, feeding, and supervision of medication which could normally be self-administered, and which does not entail or require the continuing attention of trained medical or paramedical personnel."
Under the Secretary's formulation, the services performed for an individual would be the sole criterion in determining whether care was "custodial". The symptoms of the illness or injury being treated, the risk such injury or illness posed to the individual or the improvement in the patient's condition would not be considered except as they dictated the treatment administered. This court does not believe that Congress intended to restrict consideration of the patient's well-being in such a fashion. The Social Security Act is remedial and is to be construed liberally. Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965); Easttam v. Secretary of Health, Education and Welfare, 364 F. 2d 509 (8th Cir. 1966). In Sowell v. Richardson, 319 F.Supp. 689 (D.S.C. 1970), the Secretary suggested a formulation for the term "custodial care" similar to the one urged here. The court rejected the proposed formulation, finding that:
"It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified." (319 F.Supp. 689, 692).
In setting forth physician certification requirements in the case of mental and tuberculosis hospitals, Congress provided that the physician must certify not only that the care was required, but also that "such treatment can or could reasonably be expected to improve the condition for which such treatment is or was necessary" § 1814 (a) (2) (A) and (B), 42 U.S.C. § 1395f (a) (2) (A) and (B). This criterion was incorporated in the Act to distinguish treatment in these institutions from purely custodial care. See Report of Committee on Finance, 1965 U.S.Code Cong. & Admin.News p. 1987. This additional certification requirement is not present in subparagraph (C) applicable to post-hospital extended care facilities. By clear inference, care intended to facilitate healing and certified by the physician as necessary was not considered to be custodial.
The Report of the Committee on Finance also contains the following statement:
"(a) Conditions and limitations on payment of services

(1) Physicians' role

"The committee's bill provides that the physician is to be the key figure *301 in determining utilization of health services  and provides that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determine the length of stay. For this reason the bill would require that payment could be made only if a physician certifies the medical necessity of the services furnished...."
"In the case of posthospital extended care a physician would have to certify that the care was required because the individual needed skilled nursing care on a continuing basis for a condition with respect to which he was receiving in-patient hospital services prior to transfer to the extended care facility. . . ." 1965 U.S.Code Cong. & Admin.News p. 1986.
The Committee thus made clear its intention that responsibility for determining whether a patient required skilled nursing care would rest primarily with the physician.
All of the evidence in this record clearly demonstrates that plaintiff was admitted to the St. Louis Geriatrics Center after having sustained a severe hip fracture. In his memorandum, the Secretary concedes that plaintiff suffered from a "serious medical condition." The care plaintiff received while she remained at the Center, although it included assistance in some necessary aspects of daily living, was directed at healing the injury which had temporarily disabled Mrs. Reading, causing her earlier hospitalization, and at the same time protecting her from the hazards of infection and other complications to which her injury had exposed her. The fact that a surgical procedure may have provided a speedier cure to this 89 year old woman does not remove from the coverage of the Act the nonsurgical treatment which plaintiff in fact received at the Center. It was not the purpose of the Social Security Act to dictate treatment procedures. No where in the Act itself or in the legislative history is there the slightest indication to the contrary.
This case was not submitted, nor is it decided upon any First Amendment issue. The findings are based upon the injury sustained, the necessity for and the nature of the nursing care actually provided to plaintiff at the extended care facility, as disclosed by the record.
As the court said in Sowell v. Richardson, supra, 319 F.Supp. at 692:
"Every aspect of the plaintiff's physical condition must be considered in making the determination. Treatments immediately required are of course a major factor. However, even if no treatment were required the condition of the insured might be so unstable or unsatisfactory, as to require the extended services contemplated by the statute."
There is no evidence in the record that plaintiff's admission to the extended care facility was not required by her need for skilled medical attention. Dr. Stein certified that the care plaintiff received at the Geriatrics Center was "absolutely necessary". Giving due weight to the Act's reliance on the physician's determination of the patient's needs, the record in this case convinces the court that the care plaintiff received for her admittedly serious medical condition at the St. Louis Geriatrics Center was covered by § 1861(h), 42 U.S.C. § 1395x(h) and was not excluded under § 1862(a) (9) of the Act. Plaintiff is entitled to posthospital extended care insurance benefits for the first 100 days of her stay at St. Louis Geriatrics Center. Accordingly, the Secretary's motion for summary judgment is denied, the decision of the Secretary is reversed and the clerk is directed to enter judgment for the plaintiff in accordance with her prayer for relief.
So ordered.