**Clem R. RINE, Executor under the Will of Minnie F. Robinson, Deceased, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 74–12–W.**

United States District Court, N. D. West Virginia, Wheeling Division.

Oct. 16, 1975.

George B. Vieweg, III, Wheeling, W. Va., for plaintiff.

James F. Companion, U. S. Atty., Wheeling, W. Va., for defendant.

MEMORANDUM ORDER

MAXWELL, Chief Judge.

Clem R. Rine, Executor of the estate of Minnie F. Robinson, deceased, brings action under § 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff(b), for review of the final decision of the Secretary of Health, Education, and Welfare denying the payment of hospital insurance benefits on behalf of plaintiff's decedent for services rendered to her at the Peterson Place Division, the extended care facility of the Ohio Valley General Hospital. Section 1395ff(b) authorizes judicial review of the Secretary's final decision under 42 U.S.C. § 405(g), which provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Substantial evidence has been defined as being more

than a scintilla but less than a preponderance. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The Secretary has filed a motion for summary judgment, 56(b), Federal Rules of Civil Procedure.

The Secretary's decision denying benefits became final when the Appeals Council on January 15, 1974, affirmed the decision of the administrative law judge rendered on January 29, 1973.

42 U.S.C. § 1395d(a)(2), provides 'for post-hospital extended care services for up to one hundred days during any time of illness, and § 1395f(a)[1] directs that payment for services to an individual may be made to providers of services only if—

> (2) a physician certifies (and recertifies, where such services are furnished over a period of time . . . ) that—

> (C) in the case of post-hospital extended care services, such services are or were required to be given on an inpatient basis because the individual needs or needed skilled nursing care on a continuing basis for any of the conditions with respect to which he was receiving inpatient hospital services . . . prior to transfer to the extended care facility or for a condition requiring such extended care services which arose after such transfer and while he was still in the facility for treatment of the condition or conditions for which he was receiving such inpatient hospital services;

> . . . .

20 C.F.R. § 405.126 defines posthospital extended care as

> . . . that level of care provided after a period of intensive hospital care to a patient who continues to require skilled nursing services (as defined in § 405.127) on a continuing basis (see § 405.128) but who no longer requires the constant availability of medical services provided by a hospital.

Plaintiff's decedent, Minnie F. Robinson, was 84 years of age when she was admitted to the Ohio Valley General Hospital on July 17, 1971, with arteriosclerotic heart disease, and arteriosclerotic cerebrovascular disease with cerebrovascular insufficiency. Mrs. Robinson was discharged on July 27, 1971, and spent eight days in a nursing home awaiting space in the Peterson Place Division, the extended care facility of the Ohio Valley General Hospital. On August 4, 1971, the decedent was transferred to the Peterson Place Division.

With respect to the certification of need for skilled nursing services as required by § 1395f(a)(2), Mrs. Robinson's physician, Dr. R. U. Drinkard, wrote to the Department of Health, Education, and Welfare on December 11, 1972, ". . . in my opinion it was necessary that she [Mrs. Robinson] receive nursing care provided by Peterson Place, due to arteriosclerotic cerebrovascular disease with cerebrovascular insufficiency."

Upon her admission to Peterson Place Division, Dr. Drinkard ordered for Mrs. Robinson a regular diet and the medications of Lanoxin, a cardiac glycoside; Theragran, a dietary vitamin supplement; Betaline S, a vitamin B for insomnia; Mellaril, a tranquilizer; Diuril, a diuretic and antihypertensive agent; Agoral, a lubricant and stool softener; and nitroglycerin for angina. The record does not indicate that nitroglycerin was ever administered.

Physician's orders were written only three times during the next ninety-five days. On August 10, 1971, Dr. Drinkard ordered massage and warm packs to the decedent's neck for ten minutes three times per day, and ten milligrams

---

[1]. *Applicable Statutes* The applicable law in this case is not affected by the provisions of Public Law 92–603, Social Security Amendments of 1972. Section 247, which amends section 1395f(a)(2)(C) relating to post-hospital extended care services, is effective only with respect to services furnished after December 31, 1972.

orally of the tranquilizer Mellaril, four times per day. On September 4, 1971, the physician ordered five milligrams of the antidepressant, Ritalin, after meals, and on November 6, 1971, he ordered physiotherapy for walking exercises and that the decedent be walked three times daily.

The record shows that the decedent's oral medication was administered as directed; that she received physical therapy for five consecutive days and that she was walked with assistance in the halls from the date of her admission. The record discloses, further, that Mrs. Robinson received assistance in getting in and out of bed, bathing, dressing, eating, use of bathroom facilities, moving about, taking oral medication, and the administration of warm compresses to the neck.

A careful examination of the record discloses that Mrs. Robinson's vital signs were checked once in the period of time relevant to this action and that was on August 4, 1971, the date of her admission to Peterson Place Division. No other kind of care was given nor was any evaluation made which required the training, experience, and skill of a licensed nurse. 20 C.F.R. § 405.127(a)(c).[2]

A medical records clerk at Peterson Place Division made the following reply to a request for decedent's records:

According to our records, Minnie Robinson was discharged from Ohio Valley Hospital on July 27, 1971, to Anderson Nursing Home and was then admitted on August 4, 1971, to Peterson Place as Custodial Care. Therefore, our records do not contain certification forms or U.R. Committee Notes.

Dr. Jerry R. Kennedy, a specialist in Internal Medicine and Administrative Medicine on the staff of the Bureau of Hearings and Appeals, reviewed and evaluated the medical evidence in the record. The physician concluded that after August 4, 1971, Mrs. Robinson neither required skilled nursing care nor did she need to be an inpatient of a skilled nursing facility.

Plaintiff's attorney in a letter to the Secretary of Health, Education, and Wel-

---

2. 20 C.F.R. § 405.127(a)

(a) *Defined.* A skilled nursing service is one which must be furnished by or under direct supervision of licensed nursing personnel and under the general direction of a physician in order to assure the safety of the patient and achieve the medically desired result. Skilled nursing includes:

(1) Observation and assessment of the total needs of the patient;

(2) Planning and management of a treatment plan; and

(3) Rendering direct services to the patient.

20 C.F.R. § 405.127(c)

(c) *Evaluation of services as skilled or unskilled.* In evaluating whether services not enumerated in paragraph (b) of this section are skilled or unskilled nursing services, the following principles shall be applied:

(1) The classification of a particular service as either skilled or unskilled is based on the technical or professional training required to effectively perform or supervise the service. For example, a patient, following instructions, can normally take a daily vitamin pill. Consequently, the act of giving the vitamin pill to the patient because he is too senile to take it himself would not be a skilled service. Similarly, State law may require that all institutional patients receive medication only from a licensed nurse. This fact would not make administration of a medication a skilled nursing service if such medication can be prescribed for administration at home without the presence of a skilled nurse.

(2) The importance of a particular service to an individual patient does not necessarily make it a skilled service. For example, a primary need of a nonambulatory patient may be frequent changes of position in order to avoid development of decubiti. Since changing of position can ordinarily be accomplished by unlicensed personnel, it would not be a skilled service.

(3) Skilled paramedical services involving specialized training outside the nursing curriculum are not skilled nursing services. For example, physical, occupational, and speech therapy are discrete treatment modalities requiring specialized training for proper performance. A need for one or more of these therapies would not necessarily indicate a need for skilled nursing care.

fare dated December 12, 1972, presented arguments in plaintiff's behalf and cited in support thereof *Sowell v. Richardson,* 319 F.Supp. 689 (D.S.C.1970), *Reading v. Richardson,* 339 F.Supp. 295 (D. E.D.Mo.1972), and *Pasquale v. Cohen,* 296 F.Supp. 1088 (D.R.I.1969).

The complaint alleges, *inter alia,* that the Secretary's decision was based on hearsay, presumably referring to the report and conclusions of Dr. Kennedy.

The administrative law judge found that on admission to Peterson Place Division Mrs. Robinson's condition had stabilized and that evidence failed to establish the requirement that she needed skilled nursing care on a continuing basis for any conditions for which she received inpatient hospital treatment prior to her transfer to the extended care facility; that the decedent required only custodial or supportive services to assist her in the maintenance of her activities of daily living. The Appeals Council, affirming the administrative law judge, found that services rendered decedent were supportive or custodial in nature.[2a] 20 C.F.R. § 405.127(d)(1)(2) (9)(11)(12).

Section 1395y(a)(9) of 42 U.S.C. provides that no payment may be made for expenses incurred for services where such expenses are for custodial care.

The issue presented to this Court for determination is whether there is substantial evidence to support the Secretary's decision that the decedent did not require skilled nursing services on a continuing basis from August 4, 1971, to November 11, 1971, the period relevant to coverage in this action. The Secretary concedes that all other requirements for entitlement to coverage were met.

■ Plaintiff's objection to the Secretary's use of Dr. Kennedy as a medical adviser is without merit. The practice followed here is approved in *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842, as is the admissibility and the Secretary's reliance upon written reports by physicians who have examined the claimant but who did not testify at the administrative hearing, p. 402, 91 S.Ct. 1420.

*Reading v. Richardson, supra,* can be distinguished factually from the instant case in that Mrs. Reading's care was directed to healing a fractured hip of an 89 year old woman. Present was the need to check her vital signs regularly and to observe and evaluate the patient's condition on a continuing basis. In *Sowell v. Richardson, supra,* the patient was discharged from intensive hospital care terminally ill with cancer and with diabetes and emphysema. Her condition had not stabilized upon admission to the extended care facility and the Court found her "extremely unsatisfactory and in deteriorating" condition such as to require skilled nursing attention. A careful study of the record in the case at bar shows clearly that the Secretary made a sensible, non-technical approach to the interpretation of the Act as required by *Pasquale v. Cohen, supra.*

■ The opinion of decedent's physician, Dr. Drinkard, with respect to the standard and type of care required by his patient is entitled to great weight. *Ridgley v. Secretary of H.E.W.,* 475 F.2d 1222 (4th Cir. 1973). The fact that the physician's certification was not made prior to the expiration of the period of Mrs. Robinson's entitlement to benefits does not render it inadequate. *Reading*

2a. 20 C.F.R. § 405.127(d)(1)(2)(9)(11)(12)
   (d) *Specific services; supportive or unskilled services.* Supportive services which can be learned and performed by the average nonmedical person (and which are not skilled services in the absence of conditions specified in paragraph (c)(5) of this section) include but are not limited to:
   (1) Administration of routine oral medications, eye drops, and ointments;

   (2) General maintenance care of colostomy or ileostomy;

   (9) Use of heat for palliative and comfort purposes;

   (11) General supervision of exercises which have been taught to the patient;
   (12) Assistance in dressing, eating, and going to the toilet.

*v. Richardson, supra,* at p. 299. It is of significance, however, that orders issued by the physician upon decedent's admission to Peterson Place Division did not call for the level and standard of care on a continuing basis which required the skill and supervision of a licensed nurse. 20 C.F.R. § 405.127(a)[3]; 20 C.F.R. § 405.128[4]. Physical therapy treatment administered on five consecutive days during the period of Mrs. Robinson's eligibility does not suffice in this fact situation to bring plaintiff's claim for benefits within the purview of the statute and the regulations promulgated pursuant thereto. 20 C.F.R. § 405.127(c) (3).[5]

■ There is substantial evidence in the record to support the Secretary's finding that the standard of care required by plaintiff's decedent was unskilled or supportive in nature and his decision that the expenses incurred at the Peterson Place Division for her care were not covered by the Act.

For reasons herein stated, the Court finds that there is substantial evidence in the record to support the Secretary's decision denying plaintiff's claim for extended care hospitalization benefits. It is accordingly

3. 20 C.F.R. § 405.127(a) *supra,* n. 2.

4. 20 C.F.R. § 405.128.

Skilled nursing services are required on a continuing basis (see § 405.126) when the continuing availability of skilled nursing personnel is warranted. In determining whether the continuing availability of skilled nursing personnel is warranted, the following principles apply:

(a) *Frequency of services.* The frequency of skilled nursing services required, rather than their regularity, is the controlling factor in determining whether the continuing availability of skilled nursing personnel is warranted. For example, a patient may require intramuscular injections on a regular basis every second day. If this is the only skilled service required, it would not necessitate the continuing availability of skilled nurses.

(b) *Observation.* Observation may be the principal continuous service when the unstabilized condition of the patient requires the skills of a licensed nurse to detect and eval-

Ordered that the Secretary's final decision be, and the same hereby is, affirmed. It is further

Ordered that the Secretary's motion for summary judgment be, and the same hereby is, granted and that this civil action be dismissed and removed from the docket of the Court.

uate the patient's need for possible modification of treatment or institution of medical procedures. For example, pending stabilization of the condition, a patient suffering from arteriosclerotic heart disease may require continuous close observation by skilled nurses for signs of decompensation and loss of fluid balance in order to determine whether the digitalis dosage should be changed or other therapeutic measures should be taken. Similarly, in some cases, surgical patients (including cataract patients) are transferred from a hospital to an extended care facility while still in the immediate unstabilized postoperative period during which the possibility of adverse reaction to anesthesia and other aspects of the operative procedure necessitates close skilled monitoring. (This latter situation is, of course, the converse of the 'uncomplicated' convalescent state following the 'average' hospital stay for surgery.)

5. 20 C.F.R. § 405.127(c) (3) *supra,* n. 2.