Irving GERSTMAN as Executor of the
Estate of Belle Fineberg, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.

No. Civ–74–355.

United States District Court,
W. D. New York.

June 6, 1977.

Borins, Halpern, Snitzer, Levy, Fradin &
Loonsk, Buffalo, N.Y. (Harold M. Halpern,
Buffalo, N.Y., of counsel), for plaintiff.

Richard J. Arcara, U.S. Atty., Buffalo,
N.Y. (C. Donald O'Connor, Asst. U.S. Atty.,
Buffalo, N.Y., Borge Varmer, Regional
Atty., Region II, and Jerome T. Levy, Dep-
uty Regional Atty., Office of the Gen.
Counsel, Dept. of Health, Education & Wel-
fare, New York City, of counsel), for the
Government.

CURTIN, Chief Judge.

This is the second time this case is in this court for review, under §§ 205(g) and 1869(b) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1395ff(b)(1), of a final decision of the Secretary of Health, Education and Welfare [H.E.W.] denying plaintiff's application under 42 U.S.C. § 1395c for hospital insurance benefits.

The pertinent facts are not in contention and can be briefly stated. Plaintiff entered the Carlton House Nursing Home on April 2, 1969 and received extended care services thereafter. In early July of that year, Irving Gerstman, plaintiff's brother-in-law, who was the family member responsible for the plaintiff, was told by a Carlton administrator that plaintiff would be discharged on the advice of her physician. Since no family member was personally able to care for the plaintiff, Mr. Gerstman attempted to find a suitable alternate facility for her. He was unsuccessful in his attempt and requested that plaintiff be allowed to stay at Carlton on a residential basis.

From July 11, 1969, the date on which the plaintiff's extended care facility [E.C.F] 100-day benefits under 42 U.S.C. § 1395d(a)(2) expired, until December 12, 1969, plaintiff lived at the Carlton House Nursing Home at her own expense. On December 12, 1969, plaintiff became ill and was admitted to Buffalo General Hospital. After being treated there, she was returned to Carlton for post-hospital extended care on April 28, 1970. Plaintiff duly filed an application for post-hospital extended care benefits on April 29, 1970, for the period commencing April 28, 1970. She claimed that her December 12, 1969 hospitalization initiated a new "spell of illness" and thus again entitled her to extended care benefits under 42 U.S.C. § 1395d(a)(2).

Plaintiff's claim was rejected. She then sought review in this court and, on September 24, 1973, I remanded the case to the Secretary for the taking of additional evidence on the sole question of whether the plaintiff should be considered to have been an "inpatient of an extended care facility," as these terms are used in 42 U.S.C.

§ 1395x(a)(2), during the period October 13, 1969 to December 12, 1969. The answer to this question is determinative of the critical issue—whether or not the December 12, 1969 hospitalization constituted a new spell of illness, entitling the plaintiff to extended care benefits for the period beginning April 28, 1970. Section 1861(a) of the Social Security Act, 42 U.S.C. § 1395x(a), defines the term "spell of illness" to mean a period of consecutive days:

(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

(2) *ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility.* (Emphasis added).

On remand, the Administrative Law Judge [A.L.J.], in a careful and thoughtful opinion, reviewed the applicable statutory provisions and the facts of the case. A brief review of the A.L.J.'s findings of fact reveals the following. Carlton was an extended care facility as defined by the statute, and plaintiff while there occupied a certified skilled nursing bed. Plaintiff's records at Carlton show only two substantive doctor's orders after July 11, 1969, both involving prescribed medications, and only six notes in the "Doctor's Progress Record." "Nurses' Notes" in the plaintiff's records contain only nine entries for this period, all relating to minor problems such as low back pain or urine frequency. Plaintiff received all medication orally. A physiotherapist noted on September 2, 1969, in the plaintiff's records, that he believed plaintiff had reached "her maximum plateau." The A.L.J. also heard testimony after the remand from Mrs. Florence Lamy, the Director of Nursing Services at Carlton, whose professional opinion was that plaintiff, during the period July 11, 1969 to December 12, 1969, could have been cared

for by an average non-medical individual with some instruction.

The A.L.J., after reviewing the evidence, stated:

> . . . we arrive very readily at the conclusion that during the period from July 12, 1969, through December 13, 1969, *claimant neither needed nor received skilled nursing services on a continuing basis.*

He continued:

> . . . *the level of care claimant required and received at the Carlton House Nursing Home from July 12, 1969 to December 13, 1969, was of custodial character not warranting inpatient status at an extended care facility.* (A.L.J. opinion at 10; emphasis added).

Having made these and other factual findings, the A.L.J. proceeded to rule that where a person is not receiving skilled nursing services, even though that person is a resident in an extended care facility, he is not an inpatient within the meaning of 42 U.S.C. § 1395x(a)(2).

The Appeals Council rejected this interpretation of the statute and held that a new "spell of illness" had not commenced and that plaintiff was ineligible for benefits for the period starting April 28, 1970.

The Government's position here is that the statute, although it makes the start of a spell of illness dependent on the *receipt* of skilled nursing care, makes the termination of that spell of illness dependent only on the type of institution in which the claimant is a resident, or has been a resident within the last 60 days. In other words, the Government argues that "as a result of plaintiff's very residence in a skilled nursing home, the law requires that her contention be rejected." (Brief for the Government at 5). The Government points to So-

cial Security Ruling 69–62, upon which the Appeals Council relied, which states in part:

> Once a spell of illness has started, it continues as long as the individual remains an inpatient in . . . [an] extended care facility . . ., even though he may no longer require or receive skilled nursing care.

> \* \* \* \* \* \*

> . . . There is no basis under section 1861(a) of the Act, which defines a "spell of illness," for terminating an individual's status as an inpatient while physically in an extended care facility merely because the services which she is receiving are no longer covered.

SSR 69–62, C.B. 1969, at 147, 148.

In urging that this court uphold the Appeals Council decision, the Government argues that the agency's interpretation should be accorded substantial weight, citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), and, in addition, that the failure of Congress to change the law since this ruling was published indicates that Congress adheres to the agency's interpretation.

■■■ This court of course acknowledges the general rule that agency interpretations should be accorded substantial weight. The final interpretation of the Social Security Act is, however, by its own provisions, a judicial function. *Social Security Board v. Nierotko*, 327 U.S. 358, 368–9, 66 S.Ct. 637, 90 L.Ed. 718 (1946). The Government's second argument is not persuasive. The Social Security Act and its regulations are a complex maze. The particular question before this court is not one that has arisen with any frequency, as far as this court's research reveals,[1] and there is no reason to equate Congress's silence on this issue with acquiescence in the agency's interpretation.

---

1. The court has discovered one published case that has dealt with this question, *Brown v. Richardson*, 367 F.Supp. 377 (W.D.Pa.1973), in which the court ruled against the plaintiff's position, although it did not deal with the question at any length. The plaintiff has cited the court to one unpublished decision, *Swenson v. Finch* (D.C.Minn. Civil 6–70–31), in which the

court stated that "mere residence in an extended care facility (without being furnished extended care services) does not constitute 'spell of illness' time."

Several other administrative rulings have followed SSR 69–62. *See* SSR 70–17, C.B. 1970, at 108; SSR 76–16, C.B. 1976, at 33 (superseding SSR 70–25, C.B. 1970, at 110).

Although the court is influenced by the agency's interpretation of the statute, it is also mindful that the Social Security Act should be broadly interpreted so as to fulfill the congressional purpose behind it. *Rosenberg v. Richardson*, 538 F.2d 487, 490 (2d Cir. 1976); *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969). An unduly restrictive reading of the statute would not comport with congressional policy as it appears throughout this legislation. *Herbst v. Finch*, 473 F.2d 771, 775 (2d Cir. 1972); *Hayner v. Weinberger*, 382 F.Supp. 762, 765 (E.D.N.Y.1974).

Under the Government's interpretation of § 1395x(a), if an individual enters an E.C.F., he or she must prove that they are in need of and receiving extended care services in order to receive benefits under the Act. If an individual is in an E.C.F. but is receiving merely custodial care, then he is not entitled to the benefits. *See Pippin v. Richardson*, 349 F.Supp. 1365 (M.D.Fla. 1972); *Rine v. Weinberger*, 401 F.Supp. 1134 (N.D.W.Va.1975). When the question is whether an individual is applying for benefits for a new "spell of illness," however, the Government's position is the converse. All the Government need show to deny an applicant benefits is that he has been a resident at a qualified E.C.F. within the 60 days preceding the period for which he claims benefits. Mere presence in an E.C.F. is not sufficient to entitle a claimant to benefits, but it is enough to make the claimant ineligible if it occurs in the 60 days preceding a claim for benefits under a new spell of illness.[2]

In perhaps the great majority of cases, the agency's literal reading of the statute would produce a fair result. In most instances, one could reasonably assume that a beneficiary would return home or go to a residential or custodial facility after her illness has been sufficiently ameliorated so that skilled care is no longer needed. As the Senate report on the Social Security Amendments of 1965 states, "[a] spell of illness would *normally* begin with the day a beneficiary enters a hospital and end after the beneficiary has remained out of a hospital and out of an extended care facility for 60 consecutive days." S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in [1965] U.S.Code Cong. & Ad.News, pp. 1943, 1967 (emphasis added). But the facts of this case highlight the obvious fact that the elderly in our society do not always have the options that one might presume exist. Here the plaintiff stayed at Carlton, at her own expense and in a residential capacity, because no other suitable facility could be located for her. To woodenly apply the literal interpretation of the statute, which makes geography determinative of a person's state of health, is contrary to the spirit and intent of this legislation. This court believes, therefore, that the agency interpretation of § 1395x(a), which was followed by the Secretary in this case, is incorrect.

The decision of the Secretary must therefore be reversed. Plaintiff was not an "inmate of an extended care facility" from October 13, 1969 to December 12, 1969, as those terms are used in 42 U.S.C. § 1395x(a)(2), and therefore is entitled to benefits for the period commencing April 28, 1970.

So ordered.

---

2. An egregious example of this restrictive interpretation of the statute is found in SSR 76–16, supra, note 1. There the claimant had been hospitalized several times in the spring of 1969, eventually being discharged on May 3. Over two months later, on July 24, 1969, she was readmitted to the hospital and she reapplied for benefits.

Unfortunately for the claimant, however, the interim between hospitalizations was broken by a fortuitous one-night stay at a hospital. She had gone to a hospital outpatient clinic for the removal of a neck growth. Her doctor was late in attending her and, after removing the growth, advised her, because of the lateness of the hour and not for medical reasons, to remain overnight at the hospital. This one-night stay interrupted her 60 consecutive days out of the hospital or skilled nursing home and caused her application for benefits to be rejected.