Herman **LEVI,** By His Surviving Spouse and Executrix, Alice **LEVI,** Plaintiff,

v.

Margaret M. **HECKLER,** Secretary of Health and Human Services, Defendant.

No. 81 Civ. 3738–CSH.

United States District Court, S.D. New York.

Nov. 23, 1983.

As Amended Dec. 6, 1983.

Paul Blank, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Barbara L. Schulman, Asst. U.S. Atty., New York City, Sally Lord, Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

This is an appeal from a decision of the Secretary of Health and Human Services [1] denying plaintiff's claim for certain hospitalization benefits under the Medicare provisions of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, as amended ("the Act"). The Court's jurisdiction in this matter is founded on 42 U.S.C. §§ 405(g) and 1395ff(b). There being no dispute as to the relevant facts, the parties cross-move for judgment on the pleadings. For the reasons stated, the Secretary's motion is denied, and the plaintiff's cross-motion is granted.

### I.

Mr. Herman Levi, plaintiff's deceased husband, was a patient at Gracie Square Hospital ("GSH") from November 15, 1977 through January 25, 1978 for treatment of chronic brain syndrome, old age and a nervous brain condition. Upon discharge, he was transferred to Fort Tryon Nursing Home ("FTNH"), a "skilled nursing facility" within the meaning of § 1395x(j). Mr. Levi remained at FTNH from January 26, 1978 to December 18, 1978, because his wife was unable to care for him at home.

On February 14, 1978, Mr. Levi's initial application for Medicare benefits with respect to the services provided at the FTNH was denied on the ground that skilled nursing services were not required or needed by Mr. Levi and the services provided to him were custodial in nature. On May 25, 1978, upon Mr. Levi's request for reconsideration, that decision was affirmed. In a letter from the insurance company acting as fiscal intermediary for the Social Security Administration, the Secretary reiterated that the care provided at the FTNH did not constitute "skilled nursing care":

---

1. The suit was originally filed against former Secretary Schweiker. It is continued against his successor, Secretary Heckler.

"[T]he care Mr. Levi received ... consisted of preparation of his diet, administration of oral medications, measures to insure his safety and assistance with bathing, dressing, eating and walking. This type of care, although important to a patient's well-being, does not constitute skilled nursing care and is noncovered under the Medicare program."

Record, p. 38. In consequence of that ruling, not challenged on this appeal, Mr. and Mrs. Levi bore the cost of the stay at FTNH.

Upon exhibiting symptoms of gastritis, intestinal obstruction, distended abdomen, and vomiting, Mr. Levi left the FTNH on December 19, 1978 and was admitted to Jewish Memorial Hospital ("JMH"). Following unsuccessful treatment and surgery, Mr. Levi passed away at JMH on February 8, 1979.

Plaintiff's claim for coverage of Mr. Levi's stay at JMH was denied by Medicare on June 17, 1980. Upon plaintiff's timely request for a hearing, Administrative Law Judge Irwin L. Herzog (the "ALJ") found on December 31, 1980 that plaintiff was not entitled to benefits, on the ground that Mr. Levi's hospitalization at JMH did not constitute a new "spell of illness," as defined in 42 U.S.C. § 1395x(a). Plaintiff requested review of the ALJ's decision, and on April 15, 1981, the Appeals Council affirmed that determination. It is from this order of the Appeals Council, constituting the final decision of the Secretary, that plaintiff appeals.

## II.

Section 1395d(a)(1) of the Act provides coverage for the first 90—and, in some instances, 150—days of inpatient hospital services received during each "spell of illness." Once this coverage is exhausted, a new spell of illness must begin before an individual is once again eligible for benefits under that section.

The term "spell of illness" is defined under 42 U.S.C. § 1395x(a) to mean a period of consecutive days:

"(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

"(2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility."

In the case at bar, the ALJ has determined: 1) that FTNH is a "skilled nursing facility" within the meaning of the Act; and 2) that Mr. Levi did not require or receive skilled nursing care during his almost eleven month stay at FTNH. Neither party contests the accuracy of these factual determinations. The crucial issue now posed is whether plaintiff's admittedly custodial residence at FTNH constitutes a period where he was "neither an inpatient of a hospital nor an *inpatient of a skilled nursing facility*," 42 U.S.C. § 1395x(a)(2) (emphasis added). If plaintiff's stay cannot be so characterized, as defendant contends, then the spell of illness which began with Mr. Levi's admission to GSH on November 15, 1977 continued throughout his subsequent residence at FTNH and consequently prevented the commencement of a new spell of illness on January 19, 1978. Plaintiff maintains, however, that although Mr. Levi remained a resident of FTNH for custodial care, he was not an "inpatient" of the facility and that therefore the spell of neurological illness that began in November of 1977 terminated many months before the spell of gastrointestinal illness began in December of 1978.

This Court of course acknowledges the general rule that agency interpretations should be accorded substantial weight. The final interpretation of the Social Security Act is, however, by its own provisions a judicial function. *Social Security Board v. Nierotko*, 327 U.S. 358, 368-9, 66 S.Ct. 637, 642-43, 90 L.Ed. 718 (1946). Although the decision of the Secretary must be affirmed if it is supported by "substantial evidence," *Bastien v. Califano*, 572 F.2d 908 (2d Cir.1978), this standard is not applicable to a review of questions of law. Where evidence has not been

properly evaluated because of an erroneous view of the law, the determination of the Secretary will not be upheld. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

█ Defendant contends that section 1395x(a) manifests the intent on the part of its drafters to establish two different tests to be used in computing the length of a spell of illness. In fixing the start of a spell of illness under paragraph (1), the Secretary maintains that the level of care actually received must be determinative. In fixing the end of the same spell, however, under paragraph (2), the Secretary argues that the nature of the institution is determinative—regardless of care received. Under defendant's view, Mr. Levi was an "inpatient of a skilled nursing facility" from January 26, 1978 to December 15, 1978 solely by virtue of the fact that he resided at FTNH, a facility equipped to provide skilled nursing services.

█ This narrow issue of statutory interpretation has already been addressed by at least five district courts within this Circuit—including two within the Southern District. These courts have unanimously rejected the two-tiered approach suggested here. *See Steinberg v. Schweiker*, 549 F.Supp. 114 (S.D.N.Y.1982); *Picard v. Secretary of Health and Human Services*, Medicare & Medicaid Guide (CCH), ¶ 30,722 (S.D.N.Y.1980); *Levine v. Secretary*, 529 F.Supp. 333 (W.D.N.Y.1981); *Fineberg v. Secretary of HEW*, 363 F.Supp. 1382 (W.D.N.Y.1973); *Gerstman v. Secretary*, 432 F.Supp. 636 (W.D.N.Y.1977). The phrase "inpatient of a skilled nursing facility" must be understood to refer to an individual who both resides in a skilled nursing facility *and* receives the "skilled nursing care" there available. *Steinberg*, 549 F.Supp. at 116. Where, as here, the latter factor is concededly absent, an individual cannot properly be said to be an inpatient of a skilled nursing facility. *Ibid.* Mr. Levi was therefore eligible for a new spell of illness well before his admission to JMH and entitled to the benefits that the Act provides.

Defendant's current approach is patently contrary to the remedial nature of the Act and results in what has been accurately viewed as "an inequitable and unjustifiable anomaly." *Steinberg v. Schweiker*, 549 F.Supp. at 117:

"It is illogical, to say the least, to read the statute to provide that a person who resides with his family is entitled to benefits while a person who, because of the unavailability of other accommodations, resides at a nursing home at his own expense without receiving medical or extended care services is not entitled to benefits."

*Picard v. Secretary of Health and Human Services*, Medicare & Medicaid Guide (CCH), ¶ 30,722 at 9115. *See also Gerstman*, 432 F.Supp. at 639.

It is clear, as defendant observes, that the Medicare legislation was designed "to assure that the system would be self-supporting." Defendant's Brief, p. 10. It is equally clear, however, that any reading of the Act "which makes geography determinative of a person's state of health" is contrary to the spirit and intent of the legislation. *Gerstman*, 432 F.Supp. at 639.

Today's decision marks the sixth reported occasion on which a district court of this Circuit has reversed a denial of benefits by the Secretary based upon this same narrow issue of statutory interpretation. While continuing to apply a reading of § 1395x which has been unanimously rejected by district courts within the Second Circuit, the Secretary has chosen not to appeal any of these adverse rulings to the Court of Appeals. Although the decision of a district court generally binds only those parties in the controversy before it, "[a] fundamental of justice is equality of treatment." *Jones v. Califano*, 576 F.2d 12, 20 (2d Cir.1978). As the *Jones* court also observed:

"For poor and disabled people, time is a precious commodity.... To require each claimant to pursue his administrative remedy is to vindicate no legitimate agency interest when the only disputed issue is one of statutory construction."

*Id.* at 20–21.

Although *Jones v. Califano, supra,* involved the failure of the Secretary to apply

the Act as interpreted by the Court of Appeals, the Secretary's practice here regarding § 1395x appears similarly problematic. The Secretary refuses to appeal, disregards an unbroken line of district court cases, rejects comparable claims, and ultimately confers benefits only upon those possessing the financial and physical resources to press their claims in court. The Secretary may fairly be regarded as seeking to forestall judicial review "by the fortuity of a termination of the individual grievance," *Id.* at 20, thereby thwarting the law. This is a cynical and callous way to administer a humanitarian program. It shames the Secretary and the government her office represents.

The issue of statutory interpretation here raised appears to be similar to others which the United States Supreme Court has described as "peculiarly appropriate" for class relief. *See Califano v. Yamasaki,* 442 U.S. 682, 699, 701, 99 S.Ct. 2545, 2556, 2557, 61 L.Ed.2d 176 (1979):

> "The issues involved are common to the class as a whole. They turn on questions of law applicable in the same manner to each member of the class.... It is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue. And the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every social security beneficiary to be litigated in an economical fashion under Rule 23."

Because the federal courts are unable permanently to settle this issue so long as it is raised only in controversies involving one claimant which are not appealed to the Court of Appeals, it can only be hoped that some enterprising claimant will take advantage of the binding finality which the class action provides and carry the burden which the Secretary refuses to assume.

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is granted. Defendant's motion is denied. The decision of the Secretary is reversed and remanded for a computation of benefits for the period commencing December 19, 1978.

It is So Ordered.