Herman LEVI, by his surviving spouse and executrix, Alice LEVI, Appellee,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellant.

No. 1203, Docket 84–6041.

United States Court of Appeals, Second Circuit.

Argued May 11, 1984.

Decided June 5, 1984.

Alan Nisselson, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. Jane E. Booth, Asst. U.S. Atty., New York City, of counsel), for appellant.

Paul Blank, New York City, for appellee.

Constance P. Carden, New York City (Jonathan A. Weiss, New York City, of counsel), for amicus curiae Legal Services for the Elderly.

Before OAKES and VAN GRAAFEI-LAND, Circuit Judges, and BONSAL, District Judge.*

PER CURIAM:

On November 15, 1977, Herman Levi was admitted to Gracie Square Hospital for treatment of old age chronic brain syndrome. Approximately ten weeks later, Levi was discharged from the hospital, but, because his wife was unable to take care of him in their small apartment, he did not return home. Instead, Levi was admitted to the Fort Tryon Nursing Home, where he received custodial care. While resident at the nursing home, Levi was notified by the insurance company acting on behalf of the Secretary that Medicare would not pay for his stay at Fort Tryon, since the services performed there did not meet the level of "skilled nursing services" required by the Social Security Act. 42 U.S.C. § 1395d(a)(2) (1976). Levi did not challenge this conclusion.

On December 19, 1978, Levi, suffering from intestinal obstruction, gastroenteritis, and a distended abdomen, was admitted to Jewish Memorial Hospital. On February 8, 1979, Levi had a cardiac arrest and died.

This lawsuit concerns the Secretary's decision that Levi's surviving spouse and executrix was not entitled to Medicare payments for Levi's hospitalization at Jewish Memorial. The Secretary's position was that since Mr. Levi had been resident at the Fort Tryon nursing home immediately following his initial hospitalization at Gracie Square and up until his transfer to Jewish

* Of the Southern District of New York, sitting by designation.

Memorial, the entire period from November 15, 1977, through February 8, 1979, should be conceptualized under the Medicare statute as one "spell of illness," the available coverage for which had already been exhausted. The United States District Court for the Southern District of New York, Charles S. Haight, Jr., Judge, reversed the Secretary. The court held that since Levi, by the Secretary's admission, received only custodial care while at Fort Tryon, he was not an "inpatient" in a skilled nursing facility under the Medicare statute, and that Levi's hospitalization at Jewish Memorial thus triggered a new "spell of illness" for which Medicare benefits were available and due. We affirm.

The Social Security Act provides Medicare coverage for those 65 years and older for up to 150 days of hospital services during a "spell of illness." 42 U.S.C. § 1395d(a)(1) (1976).[1] Once this coverage is exhausted, a new "spell of illness" must commence in order for an individual to become again eligible for Medicare benefits.

A spell of illness begins with the first day that the patient receives inpatient hospital services or extended care services; the spell of illness ends, according to the statute, "with the close of the first period of 60 consecutive days thereafter on each of which [the individual] is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility." 42 U.S.C. § 1395x(a) (1976).

The narrow question presented in this case is whether appellant Secretary was correct that Levi, while resident at Fort Tryon (which is conceded by appellee to be a skilled nursing facility) was an "inpatient" there within section 1395x(a), despite the fact that he was, as the Secretary admits, *not* receiving skilled nursing care but only custodial attention. Finding the Secretary's reading of "inpatient" to be erroneous, Judge Haight ruled that the phrase "inpatient of a skilled nursing facility" "must be understood to refer to an individual who both resides in a skilled nursing facility *and* receives the 'skilled nursing care' there available." *Levi v. Heckler*, 575 F.Supp. 1381, 1384 (S.D.N.Y.1983) (emphasis in original).

While recognizing that the test for review of an agency's interpretation of a statute is one of reasonableness, *Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965), we agree with the district court's reading and disagree with the Secretary's for a number of reasons. At the outset, we concur with Judge Haight that the effect of reading "inpatient" as the Secretary would do is to condition eligibility of Medicare benefits on whether the individual's family is able to look after him or her at home, or whether he or she must reside in a nursing home. Such an ability may well turn on the size of the individual's family, its financial means, the health or illness of other family members, or even whether the individual has a family to look after him or her. To allow Medicare eligibility to turn on these factors is not only illogical but also contrary to the spirit of the Social Security Act. *See*

---

1. § 1395d. Scope of benefits

    (a) Covered services

    The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf or, in the case of payments referred to in section 1395f(d)(2) of this title to him (subject to the provisions of this part) for—

    (1) inpatient hospital services for up to 150 days during any spell of illness minus 1 day for each day of inpatient hospital services in excess of 90 received during any preceding spell of illness (if such individual was entitled to have payment for such services made under this part unless he specifies in accordance with regulations of the Secretary that he does not desire to have such payment made);

    (2)(A) post-hospital extended care services for up to 100 days during any spell of illness, and (B) to the extent provided in subsection (f), extended care services that are not post-hospital extended care services;

    (3) home health services; and

    (4) in lieu of certain other benefits, hospice care with respect to the individual during up to two periods of 90 days each and one subsequent period of 30 days with respect to which the individual makes an election under subsection (d)(1) of this section.

*Rosenberg v. Richardson,* 538 F.2d 487 (2d Cir.1976).

The holding of the court below that the meaning of "inpatient" necessarily implicates the nature of the services received, as well as the place where the individual resides is, we believe, bolstered by the plain meaning of the word. An inpatient, after all, is a *patient,* which one dictionary defines as "one under medical treatment," *American Heritage Dictionary* (New College ed. 1976), and another defines as "(1) a sick individual esp. when awaiting or under the care and treatment of a physician or surgeon ... (2) a client for medical service (as of a physician or dentist) ...." *Webster's Third New International Dictionary* 1655 (1971). If one resides at a hospital but is not receiving medical care, one is simply not a patient, in or out. One may be simply old and poor with nowhere else to go, and no one to whom to turn.

We do not, however, rely on dictionary definitions. Rather we are persuaded that the reading urged by the Secretary leads to irrational and illogical distinctions and is itself unreasonable. As Judge Miller said in *Eisman v. Mathews,* 428 F.Supp. 877, 880 (D.Md.1977),

> No persuasive reason has been advanced by the Secretary, and certainly none appears in the legislative history, why Congress would treat more niggardly a person, who had been required to stay in a nursing home at great personal expense for custodial care due to the inability of persons at home to care for him, than a more fortunate person in exactly the same physical condition who was able to leave the nursing home to receive custodial care within the bosom of the family.

The courts of appeals that have considered the question have been similarly persuaded,[2] and we decline to create a split in the circuits on the strength of the arguments advanced by appellant.

Judgment affirmed.

---

**2.** *Friedberg v. Schweiker,* 721 F.2d 445 (3d Cir. 1983); *Kaufman v. Harris,* 731 F.2d 370 (6th Cir.1984). The issue is currently under consideration in the First Circuit. *Mayburg v. Heckler,* 574 F.Supp. 922 (D.Mass.1983), on appeal, No. 84–1022 (1st Cir., filed Feb. 23, 1984). Many district courts have found against the Secretary on this question. *E.g., Henningson v. Heckler,* No. 83–3077, (N.D.Iowa Oct. 27, 1983), *Steinberg v. Schweiker,* 549 F.Supp. 114 (S.D.N.Y.1982); *Estate of Picard v. Secretary of HHS,* No. 79–CIV–6870 (S.D.N.Y. Sept. 2, 1982), [1980–1981 Transfer Binder] *Medicare & Medicaid Guide* (CCH) ¶ 30,722; *Levine v. Secretary of HEW,* 529 F.Supp. 333 (W.D.N.Y.1981); *Burt v. Secretary*

*of HEW,* No. S–77–619 (E.D.Cal. Feb. 22, 1979); *Eisman v. Mathews,* 428 F.Supp. 877 (D.Md. 1977); *Gerstman v. Secretary of HEW,* 432 F.Supp. 636 (W.D.N.Y.1977); *Hasek v. Mathews,* Civ. No. 74–469 GBH (N.D.Cal. Feb. 8, 1977), [1977–1978 Transfer Binder] *Medicare & Medicaid Guide* (CCH) ¶ 28,345; *Hardy v. Mathews,* No. 4–Civ.–373 (D.Minn. July 28, 1976), [1976–1977 Transfer Binder] *Medicare & Medicaid Guide* (CCH) ¶ 28,031. According to appellant, two decisions have upheld her interpretation. *Stoner v. Califano,* 458 F.Supp. 781 (E.D.Mich. 1978); *Brown v. Richardson,* 367 F.Supp. 377 (W.D.Pa.1973).