Harry V. BROWN, Jr., for Harry V. Brown, Sr., Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 72–845.

United States District Court, W. D. Pennsylvania.

Dec. 5, 1973.

Merle H. Hildebrand, New Castle, Pa., for plaintiff.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

Plaintiff Harry V. Brown, Jr., for Harry V. Brown, Sr., has filed a complaint seeking review of a final order of the Secretary of Health, Education, and Welfare. The action was brought pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The case is now before the court on the government's motion for summary judgment.

There are two issues involved: (1) Whether the plaintiff is entitled as a matter of law to receive certain contested medicare benefits; and (2) Whether the government is estopped from denying that the plaintiff is entitled to the benefits.

We hold that under the Social Security Act, the plaintiff is not entitled to the contested benefits, but we remand the case to the Secretary on the estoppel question.

Harry V. Brown, Sr., was admitted to and discharged from various medical facilities numerous times after his first admission to Jameson Memorial Hospital in New Castle, Pa., on April 7, 1968, until his death. Mr. Brown was discharged from his next-to-last stay at Jameson Memorial Hospital on October 5, 1969. He was admitted the same day to the Golden Hill Nursing Home. On January 13, 1970, Mr. Brown was discharged from the nursing home and readmitted to the hospital. He died there 49 days later on April 26, 1970. This suit concerns whether the plaintiff or the defendant is responsible for paying the charges for the 49 days [1] of hospital services rendered Harry V. Brown, Sr., between January 13 and April 26.

The government has refused payment because it contends that there was no period of 60 consecutive days following April 7, 1968, in which Mr. Brown had not been an in-patient of a hospital or facility meeting the requirements of § 1861(j) of the Act, 42 U.S.C. § 1395x(j); therefore, no new spell of illness as defined by § 1861(a)(1) of the Act, 42 U.S.C. § 1395x(a)(1), had begun; and therefore, Mr. Brown, having exhausted his benefits under the initial spell of illness, was not entitled to any benefits for services he received at the hospital on or after January 13, 1970.[2]

---

[1.] The 49 days are over and above the 150 days allowable under § 1812(a)(1), of the Act, 42 U.S.C. § 1395(a)(1).

[2.] The relevant section of the Act in effect during the period involved in this dispute defined "spell of illness" as follows:

"§ 1395x. Definitions

For purposes of this subchapter—

Spell of Illness

(a) The term "spell of illness" with respect to any individual means a period of consecutive days—

(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

(2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of an extended care facility." 42 U.S.C. § 1395x(a), § 1861(a) of the Act.

For purposes of § 1395x(a)(2) the Act, at the time, defined "extended care facility" as:

". . . an institution . . . with one or more hospitals having agreements in effect under Section 1395cc of this title and which—

(1) is primarily engaged in providing to inpatients (a) skilled nursing care and related services for patients who require medical or nursing care, or (b) rehabilitation services for the rehabilitation of injured, disabled, or sick persons; . . ." 42 U.S.C. § 1395x(j)(1) § 1861(j) of the Act.

The plaintiff contends this interpretation of the statute is incorrect. He argues that his father was senile and unable to care for himself. He testified before the Hearing Examiner that his father's erratic behavior made it impossible for either he and his brother or a housekeeper to care for Mr. Brown. The plaintiff and his brother, therefore, placed Mr. Brown in the Haven Convalescent Home (he was later moved to Golden Hill Nursing Home) where he received custodial care—as opposed to extended care—services. The brothers paid the monthly nursing home bills and considered the nursing home to be their father's permanent residence.

■ There is no dispute that if Mr. Brown had spent the period from October 5, 1969, to January 13, 1970, (the time he was at Golden Hill before entering the hospital for the last time) at the home of one of his sons or at his own home, the 60 day period would have elapsed and a new "spell of illness" would have begun by the time he was hospitalized. Then he would have been entitled to benefits. The plaintiff contends that a new spell of illness should begin in this case because Mr. Brown was "home," in effect, since Golden Hill Nursing Home was his permanent residence. The Secretary argues, however, that regardless of the type of care Mr. Brown received and regardless of whether Golden Hill was his "home," Golden Hill falls within § 1861(j) of the Act, 42 U.S.C. § 1395x(j), and therefore, under § 1861(a)(2), 42 U.S.C. § 1395x(a)(2), the time he spent there cannot be counted toward the 60 day interval before a new spell of illness can begin.

The Hearing Examiner agreed with the plaintiff's position and held that no monies for overpayment could be recovered from the plaintiff by the government. The Appeals Council, on its own motion, reviewed and reversed the Hearing Examiner's decision.

We do not think it is necessary to review at length the Appeals Council's decision. Suffice it to say that we think their analysis of the Act is correct. While the result may be harsh, we think the Appeals Council properly interpreted the Congressional intent as expressed in the Act. If the result is to be changed, the Act must be amended by Congressional action, not judicial fiat.

■ However, we remand this case to the Secretary on the estoppel question. It appears that the plaintiff raised the issue before the Hearing Examiner but neither the Hearing Examiner nor the Appeals Council considered or decided it. It was, however, raised again at oral argument here.

The record shows that the plaintiff and his brother testified before the Hearing Examiner that they read and relied on a "Medicare Book" [3] which said "You don't have to bother about trying to keep track of how many days or visits you use in each benefit period. The notice you receive from the Social Security Administration after you have used any hospital insurance benefits, will tell you how many benefit days and visits you have left in that benefit period." (T. p. 5). According to the testimony of the plaintiff and his brother no such notice was ever given to them. The plaintiff's brother, Don Brown, testified that:

"I had absolutely no knowledge that his (Mr. Brown's) benefit period was used up and to the best of my knowledge there was no notification on the part of the Social Security Administration that his benefits had been used to the extent where he had overdrawn and used his benefits and also to the point where the last stay in the hospital were denied because of the government's contention that he had

3. This is an apparent reference to the pamphlet "Your Medicare Handbook." The pamphlet, published by the Social Security Administration, is dated May, 1968. The introduction, which draws special attention to the section Don Brown testified he and his brother (the plaintiff) relied on, is signed by Robert M. Ball, Commissioner of Social Security.

used up all his benefit periods. . . . I am sure it would have changed things had we been notified that we were incurring a debt of this magnitude through the hospital. . . . We are talking probably about a bill the size of what an average working man's income runs to in a year's time and I am sure had we known this size of a bill was going to be run up, that we would have examined to see if there was private individuals who had homes that, who would have rendered the kind of service that we had intended him to get at Golden Hill through private sources at a much less [sic] economical rate and also it would have been in a position to have extended his benefit period." '(T. pp. 12–14).

By remanding this case to the Secretary, we are not deciding that, as a matter of law, estoppel may be successfully invoked by the plaintiff against the Secretary. We are merely remanding the case to the Secretary for a decision on whether the factual prerequisites for the application of estoppel are present. If the Secretary finds that they are present we will then decide whether the plaintiff may successfully rely on estoppel.

On remand the Secretary should consider and decide after taking testimony, if necessary:

(1) Whether under the statute and related administrative regulations the Commissioner of Social Security had authority to make the statement found on page 7 of the pamphlet "Your Medicare Handbook" concerning notice of the number of days remaining in a given benefit period;

(2) Whether the issuance of such a notice was required or provided for by any Social Security Administration practice, regulation, or ruling;

(3) Whether such a notice was ever given to Harry V. Brown, Sr., Harry V. Brown, Jr., or any other person; and

(4) If such a notice was not given, whether the plaintiff relied to his detriment on the government's failure to give notice.[4]

Accordingly, the case is remanded to the Secretary for action consistent with this opinion.

An order will be entered.

---

4. We note, of course, that Don Brown testified before the Hearing Examiner about his reliance on the explanation of the Commissioner contained in the Handbook. This court, however, cannot decide the credibility of witnesses from the bare record. Such factual findings must initially be made by the Secretary.