**Robert F. STONER, Administrator, W/W/A, Estate of J. Frank Stoner, Deceased, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health Education and Welfare, Defendant.**

Civ. A. No. 7–71671.

United States District Court, E. D. Michigan, S. D.

Oct. 18, 1978.

Cedric A. Richner, Jr., Richner & Hibbard, Southfield, Mich., for plaintiff.

James K. Robinson, U. S. Atty. by Charles J. Kalil, Asst. U. S. Atty., Detroit, Mich., for defendant.

MEMORANDUM OPINION

FEIKENS, District Judge.

This is an action for judicial review of a final decision by defendant, Secretary of the Department of Health, Education and Welfare, denying plaintiff extended care service benefits on the ground that plaintiff had exhausted the number of days of coverage for skilled nursing home care to which he was entitled under "Medicare," 42 U.S.C. § 1395 *et seq.* The only question before me is whether the decision of the Secretary was supported by substantial evidence. 42 U.S.C. § 405(g). See, in this regard, 42 U.S.C. § 1395ff(b).

Plaintiff suffered a stroke in September 1974 and was hospitalized on the 26th of that month at St. Clair Osteopathic Hospital. On October 17, 1974 plaintiff was transferred to Port Huron Mercy Hospital for further treatment. Subsequently, on November 13, 1974 plaintiff was transferred to St. Clair County Medical Center, a skilled nursing facility participating in the Medicare program. At the St. Clair County Medical Center plaintiff received skilled nursing care and participated in a physical therapy program. Plaintiff received full

benefits under Medicare for the 85 days of extended care service provided by St. Clair County Medical Center from November 13, 1974 to February 6, 1975.

On February 6, 1975 plaintiff was transferred to Marwood Manor in Port Huron. Although Marwood Manor is defined as a "skilled nursing facility" for Medicare purposes,* it provides both skilled and basic care services to its patients. Plaintiff remained at Marwood Manor, *receiving basic care only*, until June 9, 1975, when he returned home. Plaintiff personally paid for the 124 days of service provided at Marwood Manor.

Some five days after returning home plaintiff suffered another stroke and was hospitalized at Port Huron Mercy Hospital. On June 18, 1975 plaintiff was again transferred to Marwood Manor. Three days later plaintiff fell and broke his hip; he was readmitted to Port Huron Mercy Hospital for treatment. On July 9, 1975 plaintiff entered St. Clair County Medical Center for skilled nursing care and physical therapy.

Plaintiff filed for Medicare benefits for the services rendered at the St. Clair County Medical Center beginning on July 9, 1975. The Medicare intermediary, Traveler's Insurance Co., paid benefits to plaintiff for only 15 days—through July 23, 1975—on the ground that plaintiff had exhausted the maximum 100 days of extended care services to which he was entitled under the Social Security Act. Section 1812(a) provides in part:

> The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf or, in case of payments referred to in section 1395f(d)(2) of this title to him (subject to the provisions of this part) for—

> (1) inpatient hospital services for up to 150 days during any spell of illness minus 1 day for each day of inpatient hospital services in excess of 90 received during any preceding spell of illness (if such individual was entitled to have payment for such services made under this part unless he specifies in accordance with regulations of the Secretary that he does not desire to have such payment made);

> (2) *post-hospital extended care services for up to 100 days during any spell of illness* . . .

42 U.S.C. § 1395d(a). (Emphasis added.)

According to Traveler's the 124 days plaintiff spent at Marwood Manor did not interrupt his first spell of illness since Marwood Manor was a "skilled nursing facility" within the meaning of Section 1861(j), and, Traveler's points out, Section 1861(a) of the Social Security Act provides that a spell of illness terminates when the patient has spent 60 consecutive days "on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility." 42 U.S.C. § 1395x(a)(2).

After Traveler's denied his request for reconsideration plaintiff sought a full hearing before the administrative law judge.

The administrative law judge found that plaintiff's first spell of illness terminated when he spent an extended period of time receiving only basic care at Marwood Manor.

The decision of the intermediary in substance holds that the claimant had only one spell of illness starting in September 1974; that he was entitled to only 100 days of post-hospital extended care service following inpatient hospital services in a qualified hospital. It is further held that the claimant's care at Marwood Manor from February 6, 1975 to June 9, 1975, (more than 120 days) is included in

---

* Section 1861(j) provides in part:

> The term "skilled nursing facility" means . . . an institution . . . which has in effect a transfer agreement (meeting the requirements of subsection (l) of this section) with one or more hospitals having agreements in effect under section 1395cc of this title and which—

> (1) is primarily engaged in providing to inpatients (A) skilled nursing care and related services for patients who require medical or nursing care, or (B) rehabilitation services for rehabilitation of injured, disabled, or sick persons . . . 42 U.S.C. § 1395x(j)(1).

this spell of illness because Marwood Manor is classified as a skilled nursing home.

The decision ignores the fact that Marwood Manor is a qualified facility providing skilled nursing care and basic care. No claim was filed for hospital insurance benefits while the claimant was at Marwood Manor and it is obvious that had a claim been filed, it would have been rejected on the ground that he was receiving basic care also known as custodial care and not skilled nursing care. (Tr. 12)

The administrative law judge held that plaintiff could receive a full 100 days of extended care benefits for his second spell of illness, commencing in June 1975 when plaintiff broke his hip.

The Appeals Council of the Department of Health, Education and Welfare reversed the findings of the administrative law judge, holding that the judge's reliance on the *type of care* provided rather than the *type of facility* involved ignored the clear meaning of Section 1861. Accordingly, the Appeals Council found that from September 1974 to July 1975, plaintiff suffered only one spell of illness, entitling him to a maximum of 100 days of extended care benefits:

> In this case, the record reveals that the claimant's spell of illness began on October 17, 1974, the date he began receiving covered inpatient hospital services at the Port Huron Hospital. Since the claimant remained an inpatient of a hospital or skilled nursing facility up through the date of his readmission to the St. Clair County Medical Centre on July 9, 1975, the claimant's spell of illness has continued. Although the claimant was a basic care patient of Marwood Manor, a non-participating Medicare facility for a period of 120 consecutive days between his stays at the St. Clair County Medical Centre, his benefit period did not end, even though he was receiving a non-covered level of care. * * * Thus, the law does not address the type of care an individual receives, but rather determines whether a new benefit period may begin

by the type of institution in which the beneficiary was domiciled during the 100 day consecutive period.

(Tr. 7)

I have examined the statutes and the cases on the issue of whether an individual who remains in a skilled nursing facility receiving basic care may terminate a spell of illness after the statutory period has run and I must conclude that the decision of the Appeals Council was correct.

Plaintiff argues that it is unfair that an individual who receives basic care at home or with relatives for 60 consecutive days has terminated a spell of illness under the Social Security Act while an individual, such as plaintiff, who cannot receive basic care at home and must seek it from a skilled nursing facility, continues one spell of illness for purposes of determining payable benefits. Although I am inclined to agree that the statute discriminates unfairly between two groups of persons who have nearly identical needs, I cannot ignore the clear language and meaning of Section 1861 to allow plaintiff here to recover benefits.

As the court noted in *Brown v. Richardson*, 367 F.Supp. 377, 379 (W.D.Pa.1973):

> We do not think it is necessary to review at length the Appeals Council's decision. Suffice it to say that we think their analysis of the Act is correct. While the result may be harsh, we think the Appeals Council properly interpreted the Congressional intent as expressed in the Act. If the result is to be changed, the Act must be amended by Congressional action, not judicial fiat.

Judge McCune's decision in *Brown* is also consistent with the legislative history of Section 1861 which indicates that Congress was fully aware of the disparate effect the section would have upon Medicare claimants. See, S.Rep.No. 404, 89th Cong., 1st Sess., 161–169 (1965); U.S.Code Cong. & Admin.News 1965, p. 1943. *Proposed Amendments to the Social Security Act*: Hearings on H.R. 5710 Before the Ways and Means Committee, 90th Cong., 1st Sess. 687, 690 (1967) (statement of George Cartmill);

*id.* at 787, 798 (statement of John K. Pickens).

Plaintiff cites *Eisman v. Mathews,* 428 F.Supp. 877 (D.Md.1977) to support his argument that he is entitled to full benefits under the Social Security Act. In *Eisman* Judge Miller was disturbed by the apparent inequity Section 1861 worked upon the plaintiff. He stated:

> No persuasive reason has been advanced by the Secretary, and certainly none appears in the legislative history, why Congress would treat more niggardly a person, who had been required to stay in a nursing home at great personal expense for custodial care due to the inability of persons at home to care for him, than a more fortunate person in exactly the same physical condition who was able to leave the nursing home to receive custodial care within the bosom of the family.

428 F.Supp. at 880.

Although a judge may note that no persuasive reason exists for a particular legislative scheme, he is not at liberty to ignore that scheme on the ground that he finds the reasons behind it inadequate or unpersuasive. If plaintiff and others similarly situated are to prevail in their claims, they must do so legislatively, not judicially as they seek to do here.

For the reasons stated above the plaintiff's motion for summary judgment is denied; the defendant's motion for summary judgment is granted. The decision of the Secretary of Health, Education and Welfare, as enunciated in the decision of the Appeals Council is affirmed.