William Perry EISMAN, Personal
Representative of the Estate of
Bertha Eisman, Deceased

v.

F. David MATHEWS, Secretary of
Department of Health,
Education & Welfare.

Civ. A. No. M–75–1169.

United States District Court,
D. Maryland.

Feb. 25, 1977.

William Perry Eisman, pro se.

Jervis S. Finney, U. S. Atty., and Virginia
S. Draper, Asst. U. S. Atty., Baltimore, Md.,
for defendant.

## OPINION

JAMES R. MILLER, Jr., District Judge.

In this action plaintiff, William Perry Eisman, as the personal representative of the Estate of Bertha Eisman, seeks judicial review of the Secretary's final decision which denied "Medicare" payments under Title XVIII of the Social Security Act for certain hospital expenses of the deceased, Bertha Eisman, and which ordered repayment to the Secretary of earlier disbursements found to have been mistakenly paid by the Secretary on behalf of Mrs. Eisman. The jurisdiction of this court to review the Secretary's determination arises under 42 U.S.C. §§ 405(g) and 1395ff(b).

There is no dispute between the parties as to the applicable facts. The question is one of law and is now before the court on cross-motions for summary judgment.

Under the Act, Medicare will make payments for "inpatient hospital services" provided to an eligible patient for a single "spell of illness" for a maximum period of 150 days, 42 U.S.C. § 1395d(a)(1), and will make payments for "post-hospital extended care services" for that same "spell of illness" for a maximum period of 100 days, 42 U.S.C. § 1395d(a)(2). If a Medicare beneficiary suffers successive "spells of illness," a declining amount of coverage for "inpatient hospital services" is provided for each successive "spell of illness," 42 U.S.C. § 1395d(b)(1), while coverage for "post-hospital extended care services" remains at a constant 100 days for each successive "spell of illness," 42 U.S.C. § 1395d(b)(2). Thus, whether an individual, who is otherwise

qualified, receives coverage from Medicare for "extended care services" after payments on that individual's behalf for 150 days of "inpatient services" and 100 days of "extended care services" for a first "spell of illness" is determined by whether the individual has suffered a second "spell of illness," thereby renewing the coverage.

The Act provides that a second "spell of illness" may not begin until the first "spell of illness" has ended, as can be seen from the following definition in 42 U.S.C. § 1395x(a)(1) and (2):

"(a) The term 'spell of illness' with respect to any individual means a period of consecutive days—

"(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

"(2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility."

Under the foregoing definition, the beginning of a "spell of illness" is marked by the first receipt of *services* while, in contrast, the termination of that "spell of illness" occurs 60 days after release from a hospital or "skilled nursing facility," irrespective of the type of services, if any, being rendered to the patient while in that facility. The dispute here arises from the apparent distinction between the criteria utilized to determine the beginning of a "spell of illness" and that used to determine its termination.

· The Secretary contends that a "spell of illness" may not be considered to have ended under the statute so long as the ill person still resides at a hospital or a "skilled nursing facility" within which that ill person resided during the "spell of illness." The plaintiff here contends that a "spell of illness" terminates 60 consecutive days after the ill person no longer receives "extended care services" even though that per-son may still be residing in a "skilled nursing facility."

The difference between the two views of the law arises in this case because Mrs. Eisman had previously exhausted her maximum benefit period of 150 days for "inpatient services" and her 100-day maximum benefit period for "extended care services" when she was transferred from Levindale Hebrew Geriatric Center and Hospital (Levindale), where she had been receiving "custodial care" for more than 60 consecutive days immediately prior to the time of the transfer (Tr. 15–16) although she then occupied a room where "skilled care" could have been provided (Tr. 187–189). She was transferred to Sinai Hospital, due to an intestinal obstruction which was later discovered to be cancerous (Tr.· 185, 194), where she remained for one month after which she transferred back to Levindale on January 17, 1972. She remained at Levindale until her death on October 4, 1973. From the time of her readmittance to Levindale until March 16, 1972, Mrs. Eisman occupied a room "certified" under the Medicare Program as one in which the occupant received "skilled care" while after that date until the time of her death, she occupied rooms in Levindale which were not in the portion of the facility certified to participate in the Medicare Program (Tr.·176, 189). If Mrs. Eisman's first "spell of illness" had ended before her transfer to Sinai Hospital, then a second "spell of illness" commenced upon her transfer to Sinai and Medicare payments should properly have been paid for her 31-day stay at Sinai and for 100 subsequent days during which she received "extended care services" upon her readmittance to Levindale.

The definition of a "skilled nursing facility," for the purpose of determining the end of a "spell of illness" under the requirement of 42 U.S.C. § 1395x(a)(2), is found in 42 U.S.C. § 1395x(j)(1) to be a facility which:

"is primarily engaged in providing to inpatients (A) skilled nursing care and related services for patients who require medical or nursing care, or (B) rehabilita-

tion services for the rehabilitation of injured, disabled, or sick persons."

See 42 U.S.C. § 1395x(j)(15) (2d sentence).

The Act provides that a "spell of illness" ends when the individual is no longer "an *inpatient* of a skilled nursing facility." 42 U.S.C. § 1395x(a)(2) (emphasis added). The term "inpatient" is not defined in the Act. Webster's Third New International Dictionary defines an "inpatient" as a patient who "receives lodging and food as well as treatment." A "patient" is defined as "a sick individual especially one awaiting or under the care and treatment of a physician or surgeon." *Id.* Thus an "inpatient" at a "skilled nursing facility" is an individual who receives lodging and food as well as the treatment provided by the facility which qualifies it as such a "skilled nursing facility," that is, "skilled nursing care and related services for patients who require medical or nursing care, or rehabilitation services for the rehabilitation of . . . sick persons." 42 U.S.C. §1395x(j)(1). An individual who resides at a "skilled nursing facility" without receiving its "skilled nursing care," while a resident of the facility, is not technically an "inpatient." *Fineberg v. Secretary of Health, Education and Welfare,* 363 F.Supp. 1382 (W.D.N.Y.1973); *see contra, Brown v. Richardson,* 367 F.Supp. 377 (W.D.Pa.1973).

The limited relevant legislative history supports the conclusion that Congress did not intend the difference in language, utilized in establishing the onset of a "spell of illness" as distinguished from that utilized in establishing the termination of a "spell of illness," to have the effect now contended by the Secretary. It is most probable that Congress considered the uninterrupted period during which "services" were rendered to a patient as *the* determinative factor in establishing the length of a "spell of illness," not unreasonably assuming that the services would begin when the patient entered the hospital and would end when the patient left the hospital and extended care facility. The fact that the patient had remained out of the hospital and out of the extended care facility for 60 consecutive days, and was therefore not receiving "services," meant, in the view of the Congress, that the "spell of illness" had ended. The Senate Report's only explanatory references to the provision of the statute defining a "spell of illness," aside from the section-by-section analysis which merely repeats the statute's terms, read as follows:

"A spell of illness would be considered to begin when the individual enters a hospital or extended care facility and to end when he has not been an inpatient of a hospital or extended care facility for 60 consecutive days."

and

"A spell of illness would normally begin with the day a beneficiary enters a hospital and end after the beneficiary has remained out of a hospital and out of an extended care facility for 60 consecutive days."

1965 U.S.Code Cong. & Adm.News, 89th Cong., 1st Sess., at pp. 1947, 1967. This language makes it appear that Congress equated the entering of a facility with the beginning of "services" and supports the correlative inference that Congress thought of the patient's leaving the facility as marking the conclusion of "services." Such an expectation would not be an unreasonable one and is certainly correct in the great majority of cases.

There is no evidence that the type of factual situation presented here was expressly considered by Congress when it arrived at its definition of the termination of a "spell of illness." Yet all of the reported cases dealing with the issue of when a "spell of illness" ends have arisen in factual circumstances similar to those here where the patient remained in a nursing home after Medicare coverage and skilled nursing care terminated because no family members were able and/or willing to care for that patient and the nursing home care consequently was merely custodial. *Fineberg v. Secretary of Health, Education and Welfare, supra; Brown v. Richardson, supra; Hardy v. Mathews,* CCH, Medicare and Medicaid Guide ¶ 28, 031 (D.Minn.1976); *Swenson v. Finch,* CCH, Medicare and Med-

icaid Guide, 1974 Transfer Binder ¶ 26, 172 (D.Minn.1970). No persuasive reason has been advanced by the Secretary, and certainly none appears in the legislative history, why Congress would treat more niggardly a person, who had been required to stay in a nursing home at great personal expense for custodial care due to the inability of persons at home to care for him, than a more fortunate person in exactly the same physical condition who was able to leave the nursing home to receive custodial care within the bosom of the family.

The Secretary has referred to several passages in the Senate Report, in the section-by-section analysis of the Act, which he contends support his interpretation of the statutory language defining the date of termination of a "spell of illness." The passages, appearing in 1965 U.S.Code Cong. & Adm.News, 89th Cong., 1st Sess., pp. 2120–2122, read:

> "For the specific purpose of determining how long an individual is out of a hospital in order to establish when a spell of illness ends, an institution satisfying item (1) of the definition is a 'hospital.'"

and

> "For the specific purpose of determining when a spell of illness ends (under [42 U.S.C. § 1395x(a)(2)]) the term includes any institution which satisfies item (1) [1395x(j)(1)]."

These quoted passages, however, were not concerned with the type of "services," if any, being provided at a facility, but were, instead, merely reciting the statutory language designed to prevent a person, who had exhausted his Medicare coverage, from transferring to a facility providing skilled nursing care but which did not participate in the Medicare Program and, after 60 days' treatment in the facility not participating in Medicare, re-transferring to a facility which did participate in Medicare and seeking additional Medicare benefits in that facility. To have allowed Medicare coverage to be renewed under those circumstances would have circumvented the express limitations on coverage set forth in the Act.

The interpretation of § 1395x(a)(2) given to it by the Secretary in the present context seems ". . . to be too technical a construction of the Act which [this court] need not adopt." *Hopkins v. Cohen,* 390 U.S. 530 at 534, 88 S.Ct. 1146 at 1148, 20 L.Ed.2d 87 (1968). The statute ". . . should be liberally construed to effectuate the Congressional intention to provide [medical and skilled nursing care services] payments for all qualifying persons," *Rowe v. Finch,* 427 F.2d 417 at 419 (4th Cir. 1970). Viewing the statute as a whole and recognizing the Congressional intent that medical and skilled nursing care service payments be provided for qualified persons for each "spell of illness" which they suffer, rather than just for the first such "spell of illness," this court concludes, for the reasons stated, that a period of "custodial care" extending for more than 60 consecutive days, marks the end of a "spell of illness" even though such custodial care is being performed in a "skilled nursing facility."

The plaintiff and counsel for the defendant are directed to confer and to submit an appropriate Final Order implementing the views expressed in this Opinion, said Final Order to be submitted within two weeks.