**Rose E. MAYBURG, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health & Human Services, Defendant.**

**Civ. A. No. 82–2982–K.**

United States District Court, D. Massachusetts.

Nov. 9, 1983.

Mark S. Coven, Greater Boston Legal Services, Boston, Mass., Sally Hart Wilson, Los Angeles, Cal., Eileen P. Sweeney, Washington, D.C., for plaintiff.

Joan I. Milstein, Asst. U.S. Atty., Boston, Mass., for defendant.

## OPINION

KEETON, District Judge.

This action is before the court on plaintiff's motion for class certification, Docket No. 16, and cross motions by the parties for partial summary judgment, Docket Nos. 18 and 20.

This case arose from defendant's denial of Medicare benefits to plaintiff. At issue was the interpretation of "spell of illness" in the Medicare Act (Title XVIII of the Social Security Act). In short, the Medicare Part A program provides for payment on the beneficiary's behalf for up to 90 days of inpatient hospital services provided during a single spell of illness. If a new spell of illness occurs, the 90-day coverage period begins anew. According to defendant, a single spell of illness continues as long as the Medicare beneficiary resides in a skilled nursing facility ("SNF"). Plaintiff contends that the type of care received, rather than the type of facility in which she resides, determines whether a single spell of illness persists.

Plaintiff stated six causes of action in her complaint. In its order of July 14, 1983, this court severed for expedited consideration plaintiff's claim that defendant's

interpretation of "spell of illness" conflicts with the Medicare Act. Docket No. 13. As the facts are undisputed, both parties have moved for summary judgment on this statutory claim.

## I. Facts

Plaintiff is an 88-year-old woman who is eligible to receive Part A hospital insurance benefits under the Medicare Act. Since September 11, 1976, plaintiff has been a privately-paying resident of a nursing home where she has received only custodial, rather than skilled nursing, care. Plaintiff was hospitalized for the periods of April 16–April 25, 1977, June 18–August 10, 1979, January 4–January 29, 1980, and March 2–March 18, 1980. The Administrative Law Judge ("ALJ") held that since plaintiff received only custodial care at the nursing home, new spells of illness commenced upon her hospitalizations in April, 1977, June, 1979, and January, 1980. Therefore, the ALJ ruled that hospital services rendered plaintiff in March of 1980 were payable under the Medicare Act. Docket No. 6 at 16–21. The Appeals Council, on its own motion, reviewed and reversed the ALJ's decision. *Id.* at 5–9.

## II. Class Certification

Plaintiff seeks to maintain this suit as a class action under Fed.R.Civ.P. 23(b)(2). She asks to represent a class of all persons residing in Region I of the Department of Health and Human Services who, having presented claims for Medicare Part A benefits, have been or will be denied such benefits based on a determination that they have had a single "spell of illness" which continued while they resided in an SNF, even though they were receiving custodial, rather than skilled nursing, care. Defendant does not challenge class certification *per se*, but seeks to limit the class to individuals who meet the jurisdictional requirements set forth in 42 U.S.C. § 405(g), and who reside in Massachusetts.

### A. Jurisdiction under the Medicare Act

Under 42 U.S.C. § 405(g), incorporated into the Medicare Act by 42 U.S.C. § 1395ff(b)(1), a claimant may obtain judicial review of a "final decision" of the Secretary. Judicial review is unavailable where the amount in controversy is less than $1000. 42 U.S.C. § 1395ff(b)(2).

The "finality" requirement consists of two parts: a nonwaivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be exhausted. *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). Here, all of the current members of the proposed class have filed an application for benefits with the Secretary. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). The nonwaivable jurisdictional requirement has been met.

Defendant argues that the class should not include claimants who have not exhausted the administrative remedies prescribed by the Secretary. Defendant contends that the Secretary has not waived the exhaustion of remedies requirement, and that this court should not do so. I conclude that this court has jurisdiction over proposed class members who have not exhausted their administrative remedies, under either 42 U.S.C. § 405(g) or the mandamus statute, discussed *infra*.

Under § 405(g), the power to waive the exhaustion of remedies requirement ordinarily rests with the Secretary. *Salfi, supra.* However, in some cases "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment [on the need for exhaustion] is inappropriate." *Eldridge, supra* 424 U.S. at 330, 96 S.Ct. at 900, quoted in *Caswell v. Califano*, 583 F.2d 9, 14 (1st Cir.1978). I conclude that this is such a case.

Although *Eldridge* concerned a constitutional issue which the agency had no power to decide, it did not restrict judicial waiver of the exhaustion requirement to constitutional challenges. "Where the legal issue is statutory, however, the agency does have authority to decide it, subject of course to judicial review. The test for ex-

haustion of a statutory issue in an individual case, we believe, should be whether the Secretary has taken a final position on that issue." *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346 (3d Cir.1977).[1]

■ I conclude that the Secretary has taken a final position on the interpretation of "spell of illness," and so judicial waiver of the exhaustion requirement will not cause "premature interference with agency processes." *Salfi, supra* 422 U.S. at 765, 95 S.Ct. at 2467. Defendant states that the Department has consistently interpreted "spell of illness" the same way since 1966. Docket No. 21 at 9. Moreover, exhaustion of administrative remedies by the named plaintiff is evidence of the fact that the Secretary has taken a final position on the legal issue. *Kuehner v. Schweiker*, 717 F.2d 813 (3d Cir.1983); *see also Wilson v. Secretary of HHS*, 671 F.2d 673, 678–79 (1st Cir.1982).

Defendant argues that judicial waiver is appropriate only where the unexhausted claim is collateral to the substantive claim of entitlement. *Eldridge, supra* 424 U.S. at 330, 96 S.Ct. at 900, *Caswell, supra* at 14. Some courts have held that unexhausted claims need not be collateral, *e.g., Kuehner, supra*, but I need not decide that issue here. Although plaintiff's claim does not raise a procedural issue I conclude that it is substantially collateral to the individual claims for benefits. *Cf. Caswell, supra.* A decision on plaintiff's statutory claim would not circumvent the exhaustion requirement on the issue of the merits of individual class members' claims. *See Caswell, supra* at 14. This court will not be ruling on the merits of the underlying claims for benefits but only on the standards that defendant must apply in ultimately making these determinations.

Defendant argues that judicial waiver is limited to cases where substantial hardship or irreparable harm would result from requiring exhaustion of administrative reme-

dies. *Kechijian v. Califano*, 621 F.2d 1, 5 (1st Cir.1980). She contends that since Medicare eligibility is unrelated to financial need, requiring claimants to exhaust their remedies does not impose hardship. Docket No. 22 at 4.

Pursuing a claim through administrative channels takes a great deal of time, which is an especially precious commodity for the elderly. For example, the named plaintiff here was denied Medicare benefits on April 11, 1980. The Appeals Council issued its final decision on August 16, 1982. Moreover, although Medicare eligibility is not based on financial need, "it was because of the especial coincidence of medical and financial problems among elderly people that the Medicare program was established in the first place." *Gray Panthers v. Schweiker*, 652 F.2d 146, 166 (D.C.Cir. 1980). In light of this, I conclude that substantial hardship and irreparable harm would result from requiring potential class members to exhaust their administrative remedies.

**B. Jurisdiction under the Mandamus Act**

Defendant argues that the proposed plaintiff class be limited to beneficiaries whose disputed claims involve at least $1000. The Medicare Act, at 42 U.S.C. § 1395ff(b)(2), forecloses judicial review of the Secretary's final decision if the amount in controversy is under $1000. Similarly, defendant argues that claimants who received a final administrative decision on their claims more than 60 days before the filing of this complaint be excluded from the class. Section 405(g), incorporated into the Medicare Act by 42 U.S.C. § 1395ff(b)(1), provides that a claimant seeking judicial review of a benefit determination must file an action in federal district court within 60 days after notice of the Secretary's final decision on the claim. I conclude that this court has mandamus jurisdiction under 28 U.S.C. § 1361 over the claims of proposed class members who fail

---

1. Contrary to defendant's assertions, Justice Rehnquist's ruling on her application for a stay in *Heckler v. Lopez*, 572 F.Supp. 26 (C.D.Cal. 1983), does not foreclose this line of reasoning.

As Justice Rehnquist noted, the Supreme Court has not yet addressed this issue. *Id.,* —— U.S. —— at ——, 104 S.Ct. at 14, 77 L.Ed.2d 1431.

to satisfy the jurisdictional requirements set forth in the Medicare Act. *McMahon v. Califano,* 476 F.Supp. 978 (D.Mass.1979).

42 U.S.C. § 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, states in relevant part:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court has expressly not decided whether § 405(h) precludes mandamus jurisdiction of claims arising under the Medicare Act. *Califano v. Yamasaki,* 442 U.S. 682, 697–98, 99 S.Ct. 2545, 2555–56, 61 L.Ed.2d 176 (1979); *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 332 n. 12, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Although the Court of Appeals for the First Circuit has not expressly ruled on this issue, it has suggested that mandamus jurisdiction "is elastic enough to cover cases such as these." *Caswell v. Califano,* 583 F.2d 9, 13 n. 8 (1st Cir.1978).

█ Section 405 appears to be limited to adjudicative decisions of the Secretary, bearing directly on the merits of an individual claim for benefits. *See, e.g., Ringer v. Schweiker,* 684 F.2d 643, 645 (9th Cir.1982). In the instant case, plaintiff's statutory claim does not concern a "decision of the Secretary," as that phrase is used in § 405. Therefore, § 405(h) does not bar the exercise of mandamus jurisdiction in this action. *See generally Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981).

Moreover, the same factors underlying judicial waiver of the § 405(g) exhaustion requirement support exercise of mandamus jurisdiction here. "[C]ourts traditionally have been reluctant to assert mandamus jurisdiction for the same reason that they generally have required exhaustion of administrative remedies: the desire to avoid premature judicial review and to minimize interference with the functioning of a coordinate branch of government." *Kuehner v. Schweiker,* 717 F.2d 813 (3d Cir.1983) (Becker, J., concurring). The finality of the Secretary's "spell of illness" policy ensures that exercise of mandamus jurisdiction will not unduly threaten the prerogatives of the Department. Similarly, the likelihood that plaintiff class members would suffer substantial harm if required to exhaust administrative remedies evidences the fact that judicial review is not premature.

Defendant argues that *U.S. v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) forecloses mandamus review of Medicare claim denials. There, the Court ruled that the Court of Claims had no jurisdiction under the Tucker Act to review determinations by private insurance carriers of the amount of benefits payable under Part B of the Medicare program. *Erika* is not controlling in the instant case. The Court did not have occasion to rule on the effect of § 405 on the availability of mandamus jurisdiction. *Id.* at 206 n. 6, 102 S.Ct. at 1653 n. 6. Rather, the Court ruled that the Court of Claims did not have jurisdiction to review a Medicare benefit determination under its general grant of authority, 28 U.S.C. § 1491.

Moreover, the claimant in *Erika* was challenging only the amount of a benefit award under Part B, rather than asserting any statutory or constitutional claims. *Id.* at 206 n. 5, 102 S.Ct. at 1653 n. 5. The Court did not reach the issue of whether a statutory or constitutional challenge to an announced policy of the Secretary is a "claim" within the express language of the limiting statute.

Therefore, I conclude that this court has jurisdiction over the claims of all proposed class members.

### C. Geographic Scope of Class

Plaintiff requests certification of a class of all "spell of illness" claimants residing in Region 1 of the Department of Health and Human Services ("HHS"). Defendant contends that the plaintiff class should be lim-

ited to claimants residing in Massachusetts. Defendant reasons that the final ruling in the instant case may conflict with the final ruling in a case now pending in the Second Circuit, because certain of the states in HHS Region 1 are within the jurisdiction of the Second Circuit. The Secretary also points to potential administrative problems in litigating a class action suit which involves various Medicare intermediaries. Docket No. 21 at 27–28.

■ Defendant's arguments are without merit. There is no reason to limit the geographic scope of the plaintiff class to individuals living in Massachusetts. The Supreme Court has emphasized that nothing in Rule 23 limits the geographic scope of an otherwise proper class action. *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). The pendency of a similar lawsuit in another federal court does not preclude this court from certifying a region-wide class. Any questions of issue preclusion can be considered as they arise.

■ Similarly, defendant's suggestions of administrative difficulties are unpersuasive. Defendant has not identified any differences among states in the application of her interpretation of the "spell of illness" provision. Defendant does not explain how certification of a region-wide class in a lawsuit concerning interpretation of a federal statute would involve the court in the internal operations of six different intermediaries. In light of this, certification of a class including Medicare claimants residing in HHS Region 1 is appropriate.

### D. The Class Description

■ Taking into account the matters discussed above and one more factor, discussed immediately below, I will certify a class described as follows: All persons residing in Region I of the Department of Health and Human Services who, having presented claims for Medicare Part A benefits, have been or will be denied such benefits based on a determination that they have had a single "spell of illness" which continued while they resided in a skilled nursing facility, even though they were receiving custodial rather than skilled nursing care.

This class description includes persons who have not yet presented claims for Medicare Part A benefits but will do so in the future, and whose claims will be denied if the Secretary is permitted to continue her practice of nonacquiescence in judicial precedents determining that her practice is contrary to law. This class description parallels plaintiff's request as to definition of the class. Docket No. 17 at 2; Docket No. 21 at 23. Although some of plaintiff's submissions suggest that the proposed class be limited to those persons who have already presented claims for benefits, Docket No. 16, plaintiff's prayer for declaratory and injunctive relief to protect the rights of future claimants belies this limitation. Docket No. 1 at 21. For reasons explained in part IV, including future claimants in the plaintiff class obviates any need for the extraordinary injunctive relief sought by plaintiff but nonetheless makes clear that the Secretary must conform with this court's decision when determining future claims in Region I.

■ The propriety of defining a class so as to include persons who do not now but will in the future meet the requirements of the class definition is clearly established by precedent. *E.g., Johnson v. Brelje,* 482 F.Supp. 121 (N.D.Ill.1979); *Wallace v. McDonald,* 369 F.Supp. 180 (E.D.N.Y.1973); *Washington v. Lee,* 263 F.Supp. 327 (M.D. Ala.1966), *aff'd* 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968) (per curiam). It is especially appropriate that this be done when the plaintiff's claim is that, by erecting obstacles to enforcement of legal rights of members of the plaintiff class, defendant is able as a practical matter to persist in her course of conduct despite repeated adjudications that it is contrary to law.

### III. Summary Judgment

There is no dispute between the parties as to the facts. Both parties have moved for summary judgment on plaintiff's claim

that defendant's interpretation of "spell of illness" violates the Medicare Act.

In 1965, Congress passed the Medicare Act (Title XVIII of the Social Security Act) to help ensure that the elderly would receive adequate health care. Part A of the Act, 42 U.S.C. § 1395c *et seq.*, provides for payment for hospital, skilled nursing facility, and home health care services rendered to eligible individuals. Medicare payments for inpatient hospital services are limited to 90 days for a single "spell of illness," with 60 additional lifetime reserve days of coverage. 42 U.S.C. § 1395d(a)(1). Part A Medicare benefits also cover up to 100 days of post-hospital extended care services provided during a single "spell of illness." 42 U.S.C. § 1395d(a)(2).

The Medicare Act defines a "spell of illness" as a period of consecutive days—

(1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and

(2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility.

42 U.S.C. § 1395x(a).

"Inpatient" is not defined for the purposes of the Medicare Act. Defendant contends that any SNF resident is an "inpatient" for the purposes of 42 U.S.C. § 1395x(a)(2), regardless of the type of care received. As a result, an individual who resides in an SNF, but receives only custodial care there, is eligible for Medicare Part A benefits for a single spell of illness only—that is, a total of 150 days of inpatient hospital services. In contrast, an individual who resides at home following inpatient hospital care qualifies for Part A benefits for each subsequent spell of illness—that is, an additional 90 days of coverage for each hospital stay following 60 consecutive days at home.

Plaintiff argues that for the purposes of determining the end of a spell of illness, "inpatient" means an individual who receives skilled nursing, as opposed to mere custodial, care at an SNF. Under plaintiff's interpretation the type of care received, rather than the residence of a claimant, controls. I conclude that plaintiff's reading of the spell of illness provision is consistent with the language and purpose of the Medicare Act.

■ Interpretation of the Social Security Act is a judicial function. *Social Security Board v. Nierotko,* 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946). However, defendant correctly contends that "construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). I conclude that deference to the Secretary's interpretation of the spell of illness provision is not warranted here.

Defendant argues that her construction of the statute should be given great weight, because since 1966 the Department has applied this interpretation consistently. *General Electric Co. v. Gilbert,* 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976). However, the Secretary overlooks the fact that her interpretation conflicts with the overwhelming majority of judicial decisions on the issue. *See, e.g., Steinberg v. Schweiker,* 549 F.Supp. 114 (S.D.N.Y. 1982); *Levine v. Secretary of HEW,* 529 F.Supp. 333 (W.D.N.Y.1981); *Eisman v. Mathews,* 428 F.Supp. 877, 879 (D.Md. 1977).

Defendant contends that Congress has acquiesced in her construction of the statute. *Red Lion Broadcasting Co., supra* 395 U.S. at 382, 89 S.Ct. at 1802. She reasons that her interpretation of the spell of illness provision comports with the Medicare Act because Congress has never amended this provision. Where "Congress has been made aware—acutely aware" of an agency's challenged policies, Congressional inaction may imply ratification of

administrative policies. *Bob Jones University v. U.S.*, —— U.S. ——, 103 S.Ct. 2017, 2033, 76 L.Ed.2d 157 (1983). However, there is no evidence that Congress was made aware of the Secretary's position, much less that Congress preferred it to the numerous judicial rulings to the contrary.

Defendant maintains that her interpretation of the spell of illness provision comports with the letter of the statute. She reasons that the "unambiguous" meaning of "inpatient" is an individual who remains in a hospital or SNF. Docket No. 21 at 10. I conclude that an "inpatient" at an SNF is an individual who receives lodging and food, as well as the treatment provided by the facility which qualifies it as an SNF for spell of illness purposes. 42 U.S.C. § 1395x(j)(1). Not only does this comport with the dictionary definition of "inpatient," *Eisman, supra* at 879, but also it is consistent with policies underlying the Medicare Act in general and the spell of illness provision in particular.

 The Social Security Act should be broadly construed, so as to effectuate Congress' intent to provide medical expense coverage for all qualifying individuals. *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir.1965); *Rowe v. Finch*, 427 F.2d 417, 419 (4th Cir.1970). The spell of illness limitation was enacted to control costs by ensuring that Medicare benefits would not extend to individuals requiring long term care for chronic illness. S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin.News 2834, 2904. Equating "inpatient" status with the receipt of skilled nursing care would serve both of these purposes.

Defendant notes that Congress used different terminology to define the beginning and end of a spell of illness. A spell begins when the individual is "furnished inpatient hospital services or extended care services," and ends 60 days after the individual ceases to be an "inpatient." Defendant reasons from this that Congress intended that the level of care received marks the commencement of a spell, while location governs the ending date. However, an

equally plausible explanation is that Congress assumed that a patient would be discharged from an institution upon discontinuance of skilled medical treatment, *Gerstman v. Secretary of HEW*, 432 F.Supp. 636, 639 (W.D.N.Y.1977), or, if remaining there for custodial care only, would cease to be regarded as an "inpatient."

Defendant notes that "hospital" and "SNF" are defined less restrictively for the purposes of the spell of illness provision, *see* 42 U.S.C. § 1395x(e)(1) and § 1395x(j)(1), than for the purpose of Medicare certification requirements. *See* 42 U.S.C. § 1395x(e)(2)–(9) and § 1395x(j)(2)–(15). She asserts that this was designed to prevent individuals from circumventing the spell of illness limitation by transferring to a non-certified institution to receive skilled nursing care for 60 days and then returning to a certified institution to begin a new spell of illness. She reasons that if Congress had intended that a spell be terminated by the first 60-day period in which the individual did not receive skilled medical care, it would not have needed to define hospital and SNF less restrictively for spell of illness purposes. Docket No. 21 at 12–13.

This argument undercuts rather than bolsters defendant's interpretation. Construing "inpatient" to refer to the level of care received does not render superfluous the distinction in definitions. Instead, it more precisely effectuates the underlying purpose. If an individual receives the skilled nursing or rehabilitative services specified in 42 U.S.C. § 1395x(j)(1), his or her spell of illness continues regardless of whether the institution rendering those services meets the Medicare certification requirements set forth in subsections (j)(2)–(15). However, if for 60 consecutive days an individual does not receive that minimum level of care which qualifies an institution as a hospital or SNF for spell of illness purposes, the spell terminates.

Defendant argues that the legislative history of the Medicare Act supports her construction of the spell of illness provision.

Docket No. 21 at 17–19. However, the legislative history contains no elaboration on the meaning of "inpatient." There is no indication that Congress ever expressly considered the factual situation presented here.

■ Finally, defendant argues that interests of administrative efficiency support her interpretation of the spell of illness provision. She asserts that residence of a claimant provides an objective and easily administered test for determining a spell's ending date. Docket No. 21 at 20–22. However, specific level of care determinations are routinely made in other contexts, for example in evaluating a claimant's entitlement to post-hospital extended care benefits. 42 U.S.C. § 1395d(a)(2)(A); *see also* 42 U.S.C. § 1395x(k)(3).

In sum,

> [n]o persuasive reason has been advanced by the Secretary, and certainly none appears in the legislative history, why Congress would treat more niggardly a person, who had been required to stay in a nursing home at great personal expense for custodial care due to the inability of persons at home to care for him, than a more fortunate person in exactly the same physical condition who was able to leave the nursing home to receive custodial care within the bosom of the family.

*Eisman, supra* at 880. Therefore, I conclude that the Secretary's interpretation of the spell of illness provision, 42 U.S.C. § 1395x(a), violates the Medicare Act.

## IV. Remedy

Plaintiff seeks declaratory and injunctive relief to prevent the Secretary from applying her "spell of illness" interpretation in future cases arising in Region I. Plaintiff contends that if injunctive relief were not allowed, the Secretary would remain free as a practical matter to persist in applying a statutory interpretation contrary to the mandate of Congress, issued in conformity with its constitutionally authorized legislative function, and contrary to the mandates of repeated judicial decisions, issued in conformity with their constitutionally authorized judicial function of statutory construction. I conclude, however, that an injunction is not necessary here. As to future cases in Region I, certification of the plaintiff class to include future claimants effectively precludes the Secretary's continuing practice of nonacquiescence in this region.

The Secretary does not argue that the constitution, or the principle of separation of powers there manifested, authorizes her to disregard either legislative mandates or judicial orders. What she does argue is that she is free not to acquiesce in judicial constructions of the statute as precedents, and therefore is free to continue to apply her own interpretation of the statute in all cases except those as to which an explicit judicial order applies. Her argument is that, as long as there is compliance with court orders as to the specific claims adjudicated, she is free to adopt a policy of nonacquiescence in the decisions as precedent. Pressed to its logical implications, this position virtually eliminates the doctrine of precedent.

No likelihood appears, however, that the Secretary will refuse to recognize rights expressly adjudicated. Thus, once it is made explicit that the plaintiff class whose rights are declared by this judgment includes future claimants in Region I as well as those who have already filed claims for Medicare Part A benefits in this region, no need for injunction appears. In light of the Secretary's policy of nonacquiescence, I find it essential to effective relief to declare explicitly that it would be contrary to law for the Secretary, in relation to any case arising in Region I, hereafter to apply an interpretation of "spell of illness" (as used in the Medicare Act) that denies benefits because a claimant resided in a skilled nursing facility, even though receiving custodial rather than skilled nursing care.

Of course, the Secretary need not accept the judgment of this court as final. Her route to relief from any error committed by this court, however, is appeal, not nonacquiescence.

All other issues in this case being rendered moot by this decision, I need not examine them. Final judgment will be entered forthwith in favor of plaintiff.

Judgment

For the reasons set forth in the Opinion of this date, it is ORDERED:

(1) This action is certified as a class action under Fed.R.Civ.P. 23(b)(2), with the named plaintiff serving as representative party. The plaintiff class consists of all persons residing in Region I of the Department of Health and Human Services who, having presented claims for Medicare Part A benefits, have been or will be denied such benefits based on a determination that they have had a single "spell of illness" which continued while they resided in a skilled nursing home, even though they were receiving custodial rather than skilled nursing care.

(2) Judgment is entered for plaintiffs on their first cause of action, that the Secretary's interpretation of "spell of illness" is in conflict with and in violation of the Medicare Act.

(3) The Secretary's decision on the claims of each class member whose right to judicial review had not been time-barred when this action was commenced is vacated and remanded for reconsideration under standards consistent with the Opinion of this date. All claims of members of the plaintiff class hereafter arising in Region I will be determined by standards consistent with the Opinion of this date.

(4) Within 90 days of the date of this Judgment, the Secretary shall file with the court a report identifying all persons in the class whose claims are remanded for reconsideration, and stating what action has been taken on each such claim.

(5) Within 90 days of the date of this Judgment, the Secretary shall notify each class member whose claim is remanded that: (a) his or her claim will be reconsidered, and (b) pursuant to court order, the end of a "spell of illness" is to be determined by the level of care received rather than the claimant's place of residence.