721 F.2d 445
 3 Soc.Sec.Rep.Ser. 247, Medicare&Medicaid Gu 33,478
Ruth FRIEDBERG, Executrix of the Estate of Miriam Crane
v.
Richard S. SCHWEIKER, Secretary of Health and Human Services.
 No. 83-5122.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 3, 1983.
Decided Nov. 16, 1983.
 
 W. Hunt Dumont, U.S. Atty., Jerome B. Simandle, Asst. U.S. Atty., Trenton, N.J., Juan A. del Real, Gen. Counsel, Annette Blum, Regional Atty., Region II, Washington, D.C., Holly A. Clarke, Asst. Regional Atty., Barbara Lewis Spivak (argued), U.S. Dept. of Health and Human Services, New York City, for appellant.
 Robert P. Beakley (argued), Atlantic City, N.J., for appellee.
 Before ALDISERT, HUNTER and WEIS, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 This appeal by the Secretary of Health and Human Services, from a judgment of the district court, presents an issue of first impression in the courts of appeals. We are required to decide whether a "spell of illness," as defined by 42 U.S.C. Sec. 1395x(a) of the Medicare Act continues when a person is receiving only custodial care in a "skilled nursing facility." The Secretary contends that so long as an individual resides in a skilled nursing facility he or she is considered an inpatient regardless of the type of care the individual needs and receives. The district court, on the other hand, determined that there is a distinction between custodial care and skilled nursing care, and that, under Sec. 1395x(a), one is deemed a nursing home inpatient only when receiving skilled nursing care. We find the district court reasoning persuasive and accept the analysis by District Judge Stanley S. Brotman, as set forth in the appendix to this opinion.
 
 
 2
 The judgment of the district court will be affirmed.
 
 APPENDIX
 
 3
 BROTMAN, District Judge.
 
 
 4
 This is an action brought by plaintiff, Ruth Friedberg, Executrix of the Estate of Miriam Crane, pursuant to Sec. 205(g) of the Social Security Act (hereinafter, the "Act"), 42 U.S.C. Sec. 405(g), for a review of a final determination of the U.S. Secretary of Health & Human Services (hereinafter, the "Secretary") denying plaintiff additional payment of hospital insurance benefits under Title XVII of the Act, 42 U.S.C. Sec. 1395c et seq., and refusing to classify Miriam Crane's hospitalizations at the Atlantic City Medical Center (hereinafter "ACMC") during periods after July 8, 1977 as new "spell[s] of illness" as that term is defined in 42 U.S.C. Sec. 1395x(a).
 
 
 5
 In the administrative proceedings in this case, the Administrative Law Judge (hereinafter, the "ALJ") considered the case de novo and determined on March 16, 1981 that Miriam Crane was not entitled to Medicare benefits for stays at the ACMC hospital after July 8, 1977 because Mrs. Crane from November 1, 1974 to July 8, 1977 had utilized the 150 days of entitlement to benefits for one benefit period ("spell of illness"). Upon affirmance by the Appeals Council, the ALJ's determination became the final decision of the Secretary from which plaintiff now appeals to this court.
 
 
 6
 Plaintiff alleges that the Secretary made an incorrect decision of the applicable law in determining whether or not Mrs. Crane was entitled to a spell of illness subsequent to July 8, 1977. Specifically, claimant's position is that Mrs. Crane's spell of illness ended after she resided at the skilled nursing facility for 60 consecutive days without receiving skilled nursing care and receiving only custodial care. This type of care, claimant contends, is not sufficient to constitute an "inpatient" status at a skilled nursing facility. The Bureau of Health Insurance (now known as the Health Care Financing Administration of the Social Security Administration) takes the position, however, that according to 42 U.S.C. Sec. 1395x(a), the section which defines spell of illness, an individual who resides in a skilled nursing facility is considered an "inpatient" regardless of the type of care the individual needs and receives.
 
 
 7
 A review of the record in this case indicates that Miriam Crane had been a resident of Linwood Convalescent Center ("LCC"), Linwood, New Jersey since November 30, 1974. Mrs. Crane had no other residence during the period between this date and the date of her death, and had registered to vote from that address. During the time Mrs. Crane resided at LCC she was admitted to ACMC for treatment of various illnesses and injuries on seven separate occasions.[1]
 
 
 8
 The Social Security Administration denied payment of ACMC bills subsequent to July 8, 1977 on the grounds that Mrs. Crane had utilized the full 150 benefit days available to her for each benefit period, i.e. per "spell of illness". A new benefit period had not begun and the one beginning on November 1, 1974 still continued because claimant had not lost inpatient status at a hospital or skilled nursing facility for 60 consecutive days, as required by Section 1861 of the Act, 42 U.S.C. Sec. 1395x(a). ACMC continues to bill the estate of Miriam Crane in the amount of $9,335.40.
 
 
 9
 At the hearing before the ALJ on January 6, 1981, Lois B. Hutton, R.N., an employee of LCC, testified that she had known Mrs. Crane since her admission to LCC in November, 1974. Stating that she was familiar with the Medicare regulations making the distinction between skilled nursing care and custodial care, Mrs. Hutton testified that Mrs. Crane had received skilled nursing care only on two occasions, from November 30, 1974 to February 17, 1975 and from November 9, 1975 to November 29, 1975. The remainder of the time Mrs. Crane was a resident of LCC she received only custodial care.
 
 
 10
 Medical reports submitted by Doctors Gleason and Naame indicate that Mrs. Crane's various hospitalizations at ACMC were all for separate and distinct medical conditions with the exception of the admission of January 23, 1977 when the hip prosthesis was replaced.
 
 
 11
 It should be noted that the role of the district court in reviewing determinations made by the Secretary is limited; the Act specifies that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g). However, "even if the Secretary's factual findings are supported by substantial evidence, this court may review whether the administrative determination was made upon correct legal standards." Curtin v. Harris, 508 F.Supp. 791, 793 (D.N.J.1981) (citations omitted). Accordingly, the issue before this court is whether the Secretary, in making his findings, applied the correct legal standards to the facts presented. Although this court recognizes that the position of the Social Security Administration should be given substantial weight, the judiciary is the final interpreter of the Social Security Act. Gerstman v. Secretary of H.E.W., 432 F.Supp. 636, 638 (W.D.N.Y.1977); see Social Security Board v. Nierotko, 327 U.S. 358, 368-69, 66 S.Ct. 637, 642-43, 90 L.Ed. 718 (1946).
 
 
 12
 Under the Medicare Act, insurance coverage is provided to an individual for "inpatient hospital services for up to 150 days during any spell of illness minus 1 day for each day of inpatient hospital services in excess of 90 received during any preceding spell of illness..." 42 U.S.C. Sec. 1395d(a)(1). Once the 150 days of coverage are utilized, a new "spell of illness" must begin before additional coverage is provided. The term "spell of illness" is defined in 42 U.S.C. Sec. 1395x(a) which provides:The term "spell of illness" with respect to any individual means a period of consecutive days
 
 
 13
 (1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A, and
 
 
 14
 (2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital nor an inpatient of a skilled nursing facility.
 
 
 15
 The issue of whether an individual's status as an "inpatient" continues as long as that individual is physically present in the facility irrespective of the fact that he or she is not receiving any skilled nursing care covered by Medicare, raises a question of first impression for this court. There appears to be no controlling Circuit Court of Appeals decisions and the District courts that have addressed this question are split on the issue. Supporting the position advanced by claimant are Levine v. Secretary of H.E.W., 529 F.Supp. 333 (W.D.N.Y.1981); Eisman v. Mathews, 428 F.Supp. 877 (D.Md.1977); Gerstman v. Secretary of H.E.W., 432 F.Supp. 636 (W.D.N.Y.1977). Decisions to the contrary are Stoner v. Califano, 458 F.Supp. 781 (E.D.Mich.1978); Brown v. Richardson, 367 F.Supp. 377 (W.D.Pa.1973).
 
 
 16
 The Social Security Act should be liberally construed so as to effectuate Congress' intention to provide coverage for medical expenses for all qualifying individuals. Eisman at 880, quoting Rowe v. Finch, 427 F.2d 417, 419 (4th Cir.1970). In order to insure the financial soundness of the Medicare program, a precise limitation on the available coverage is arguably necessary. The purpose of the limitation embodied in the requirement that an individual must not be an inpatient for 60 consecutive days in order for a new spell of illness to accrue is, therefore, based on financial considerations. As explained by Secretary Anthony Celebrezze, "the basic purpose of this bill is not to take care of long-term chronic illness. We are not covering that at all." Testimony of Anthony J. Celebrezze, Secretary of Health, Education and Welfare, before the Committee of Finance, United States Senate, Eighty-ninth Congress, First Session on H.R. 6675, p. 182.
 
 
 17
 The position advanced by claimant in this case is not inconsistent with the above-mentioned purpose of the 60 day requirement. Miriam Crane was not suffering from any long-term chronic illness. As Doctors Gleason and Naame stated, Mrs. Crane's hospitalizations were for treatment of separate and distinct medical conditions and injuries. During the periods between her hospital visits, which ranged in duration from 2 months to 23 months, Mrs. Crane did not receive treatment for any illness, excluding the two periods during which she received skilled nursing care prior to the hospital visits in question and which are therefore, not relevant to this determination. Requiring proof that an individual is not receiving skilled nursing services for a period of 60 consecutive days and has only received custodial care, would provide adequate protection for the Social Security Administration from providing coverage for long-term chronic illnesses. Furthermore, this would not create a problem in the interpretation of the limitations on available coverage since Medicare regulations adequately define the distinction between custodial and skilled nursing care.
 
 
 18
 Adopting the position of the Social Security Administration would have the effect of differentiating between individuals able to leave the facilities and individuals who are unable to return home and are required to become residents of a nursing home. If Miriam Crane had returned to her home and received the same custodial care that she received at LCC, a spell of illness would have terminated after each 60 consecutive days of this care. According to the Social Security Administration, the determinative factor is Mrs. Crane's physical presence in the skilled nursing facility. This illogical result was recognized by the District Court of Maryland in Eisman, a case in which the court held that a period of custodial care extending for more than 60 consecutive days would end a spell of illness irrespective of the fact that the individual received the custodial care in a skilled nursing facility. As the court stated,
 
 
 19
 No persuasive reason has been advanced by the Secretary, and certainly none appears in the legislative history, why Congress would treat more niggardly a person, who had been required to stay in a nursing home at great personal expense for custodial care due to the inability of persons at home to care for him, than a more fortunate person in exactly the same physical condition who was able to leave the nursing home to receive custodial care within the bosom of the family.
 
 
 20
 Eisman at 880. This differentiation based on physical presence in a facility is particularly inequitable in light of the plight of the elderly in today's society who do not always have the option to return home due to financial or familial concerns.
 
 
 21
 The cases cited by the Secretary recognize that their interpretation of the statute causes unfair discrimination between two groups of individuals who have similar needs, although they indicate that this harsh result should be remedied by Congress. Stoner v. Califano, 458 F.Supp. 781, 783 (E.D.Mich.1978); Brown v. Richardson, 367 F.Supp. 377, 379 (W.D.Pa.1973). This strict interpretation does not however, effectuate true Congressional intent. As stated in Gerstman v. Secretary of H.E.W., 432 F.Supp. 636, 639 (W.D.N.Y.1977), "[t]o woodenly apply the literal interpretation of the statute, which makes geography determinative of a person's state of health, is contrary to the spirit and intent of this legislation."
 
 
 22
 According to the Secretary's interpretation of Sec. 1395x(a), the beginning of a spell of illness is determined by the nature of the services rendered to a person, while the end of a spell of illness is determined by the type of facility in which the individual resides. SSR 69-62, C.B.1969, 146, 147. Congress could not have intended the language of Sec. 1395x(a) to be interpreted in such a way as to produce different tests for the determination of the beginning and end of a spell of illness. More likely, Congress equated inpatient status in a hospital or skilled nursing facility with the receipt of services; the natural assumption being that when a person leaves such a facility he or she is no longer receiving services that would be necessary for the treatment of a prolonged illness. See Eisman at 879; Gerstman at 639. The legislative history relied upon by the Secretary consists primarily of simple restatements of Sec. 1395x(a) and are, therefore, of limited value. On the other hand, the following language in the report of the Senate Finance Committee on the Social Security Amendments of 1965 supports the position advanced by claimant. As stated in the Senate report:
 
 
 23
 A spell of illness would normally begin with the day a beneficiary enters a hospital and end after the beneficiary has remained out of a hospital and out of an extended care facility for 60 consecutive days.
 
 
 24
 S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Admin.News 1943, 1967 (emphasis added). Although in the usual situation when a person no longer requires inpatient services he or she will leave the facility and return home, an elderly individual may be required to continue to reside at the facility although he or she is not receiving any skilled care.
 
 
 25
 Furthermore, the claimant's position is not inconsistent with the statute's actual language. Under Sec. 1395x(a) a spell of illness terminates when a person is no longer either "an inpatient of a hospital or an inpatient of a skilled nursing facility." 42 U.S.C. Sec. 1395x(a)(2). The court in Eisman recognized that although the term "inpatient" is not defined in the Social Security Act, by using the definitions of "inpatient" and "patient" as defined in Webster's Third New International Dictionary, the court concluded that,
 
 
 26
 an 'inpatient' at a 'skilled nursing facility' is an individual who receives lodging and food as well as the treatment provided by the facility which qualifies it as such a 'skilled nursing facility,' that is, 'skilled nursing care and related services for patients who require medical or nursing care, or rehabilitation services for the rehabilitation of ... sick persons.' 42 U.S.C. Sec. 1395x(j)(1).
 
 
 27
 Eisman at 879. Therefore, a person who receives only custodial care while a resident at a skilled nursing facility is not technically an "inpatient". Id.
 
 
 28
 It is contended that the Secretary's position is consistent with Congressional intent because Congress, by not acting contrary to the Secretary's position has, in effect, acquiesced in the Secretary's definition of a spell of illness. The court in Gerstman however, stated that,
 
 
 29
 The particular question before this court is not one that has arisen with any frequency, as far as this court's research reveals, and there is no reason to equate Congress's silence on this issue with acquiescence in the agency's interpretation.
 
 
 30
 Gerstman at 638. The Secretary also contends that Congress expressed its intentions when it addressed the problems caused by the limited coverage per spell of illness in 1967. Rather than liberalizing the definition for the close of a spell of illness, Congress provided for 60 additional days of coverage under the life-time reserve concept. In so doing, Congress acted,
 
 
 31
 to help meet the problem faced by the beneficiary who requires long term care in an extended care facility or nursing home and whose spell of illness continues through his stay in the facility because he has not been out of a hospital or any institution that is primarily engaged in providing skilled nursing care and related service for 60 consecutive days.
 
 
 32
 S.Rep. No. 744, 90th Cong., 1st Sess., reprinted in 1967 U.S.Code Cong. & Admin.News 1834, 2904. There is no indication however, that Congress, in adopting the additional 60 days coverage, specifically addressed the incongruous results reached in situations similar to the present case. These individuals, including Miriam Crane, are not beneficiaries suffering from long term illnesses who require long term care. An additional 60 days coverage is not directed at ameliorating the harsh differentiation that results from the Secretary's strict interpretation of the statute.
 
 
 33
 This court is persuaded by the district court decisions which support claimant's position, and holds that the close of a spell of illness under Sec. 1395x(a) for purposes of determining entitlement to hospitalization coverage under Title XVII of the Act, 42 U.S.C. Sec. 1395c et seq., should be determined not only by the type of institution in which an individual resides, but also by the type of care actually received by the individual while residing in the institution. This interpretation more closely effectuates Congress' intent to provide adequate coverage for medical care for qualified individuals, and produces a more equitable result without providing for an imprecise limitation on the available coverage which would arguably adversely affect the financial integrity of the Social Security System.
 
 
 34
 In the hearing, Mrs. Hutton's testimony established that Miriam Crane while residing at LCC received skilled nursing care only during the periods between November 30, 1974 to February 17, 1975 and November 9, 1975 to November 29, 1975, and that she received only custodial care for the periods after that time. Mrs. Crane was not an "inpatient" at LCC as that term is used in Sec. 1395x(a)(2) during those periods in which she only received custodial care. Her spell of illness was not continuous but rather was broken each time she did not maintain an inpatient status at LCC for 60 consecutive days.[2]
 
 
 35
 Section 405(g) of the Act provides that "[t]he court shall have power to enter, upon pleadings and transcript of the record, a judgment ... reversing the decision of the Secretary, ... without remanding the cause for a rehearing." 42 U.S.C. Sec. 405(g); see Livingston v. Califano, 614 F.2d 342, 345 (3rd Cir.1980). In the instant case, the facts are undisputed and no further testimony is necessary to establish the type of care Miriam Crane received while residing at LCC. Accordingly, the final decision of the Secretary is reversed and the case is remanded to the Secretary for a determination of the insurance benefits to be awarded plaintiff consistent with this opinion.
 
 
 36
 An order so providing will be entered.
 
 
 37
 /s/ Stanley S. Brotman
 
 STANLEY S. BROTMAN
 United States District Judge
 Dated: December 14, 1982
 
 
 [1]
 The chart below details the dates of the various admissions and the type of care that Mrs. Crane received while residing at LCC
 Facility Duration of Stay Type of Care
ACMC 11/1/74 to 11/30/74 Hospitalization;
 fractured left femur
 et al.
LCC 11/30/74 to 2/17/75 Skilled Nursing
 2/17/75 to 10/25/75 Custodial Care
ACMC 10/25/75 to 11/9/75 Hospitalization;
 fractured right femur
 et al.
LCC 11/9/75 to 11/29/75 Skilled Nursing
 11/29/75 to 1/23/77 Custodial Care
ACMC 1/23/77 to 3/11/77 Hospitalization;
 Replacement of
 prosthetic device
 in left hip et al.
LCC 3/11/77 to 5/11/77 Custodial Care
ACMC 5/11/77 to 7/15/77 Hospitalization;
 Refracture of left
 femur et al.
LCC 7/15/77 to 3/27/78 Custodial Care
ACMC 3/27/78 to 5/26/78 Hospitalization;
 fractured left distal.
 femur et al.
LCC 5/26/78 to 4/4/80 Custodial Care
ACMC 4/4/80 to 4/11/80 Hospitalization
LCC 4/11/80 to 1/6/81 Custodial Care
 
 
 [2]
 The chart below summarizes the application of this court's analysis to the particulars of Miriam Crane's hospital stays and terms of residence at LCC:
 COVERED
 DATE(S) FACILITY TYPE OF CARE DAYS DAYS
11/1/74-11/30/74 ACMC Hospitalization 29 29
11/30/74-2/17/75 LCC Skilled Nursing 80 80
2/17/75-10/25/75 LCC Custodial 251 n/a
 ***NEW BENEFIT PERIOD***
10/25/75-11/9/75 ACMC Hospitalization 15 15
11/9/75-11/29/75 LCC Skilled Nursing 20 n/a
11/29/75-1/23/77 LCC Custodial 420 n/a
 ***NEW BENEFIT PERIOD***
1/23/77-3/11/77 ACMC Hospitalization 47 47
3/11/77-5/11/77 LCC Custodial 61 n/a
 ***NEW BENEFIT PERIOD***
5/11/77-7/15/77 ACMC Hospitalization 63 63
7/15/77-3/27/78 LCC Custodial 270 n/a
 ***NEW BENEFIT PERIOD***
3/27/78-5/26/78 ACMC Hospitalization 60 60
5/26/78-4/4/80 LCC Custodial
 ***NEW BENEFIT PERIOD***
4/4/80-4/11/80 ACMC Hospitalization 7 7
4/11/80-1/6/81 LCC Custodial